Torri E. NEWMAN, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A04–0008–CR–340.

Court of Appeals of Indiana.

June 12, 2001.

Transfer Denied September 27, 2001.

Eric K. Koselke, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Janet L. Parsanko, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

### Case Summary

Torri Newman appeals his convictions for aggravated battery, a Class B felony, and carrying a handgun without a license, a Class C felony, following a jury trial. We affirm.

### Issues

Newman raises three issues for our review which we restate as:

1. Whether the trial court properly refused to give an instruction on reckless homicide as a lesser-included offense of voluntary manslaughter;

2. Whether the trial court properly admitted an audiotape recording of his statement to police; and

3. Whether he was subjected to double jeopardy.

### Facts and Procedural History

On August 1, 1999, Roger Beasley located some individuals who were interested in engaging in a drug transaction. Newman gave Beasley some cocaine and Beasley conducted the sale. In return for arranging the sale, Beasley wanted some drugs for his own use. Newman refused, Beasley became angry, and an argument ensued. Ultimately, Beasley was shot in the chest and later died. Witnesses at trial testified that Newman was seen with a gun.

Newman gave a statement to Detective Jesse Beavers of the Indianapolis Police Department. Newman gave the statement, which was recorded, after signing a waiver of his Miranda rights. Newman was subsequently charged with voluntary manslaughter, a Class A felony, and carry-ing a handgun without a license, a Class A misdemeanor. An additional count alleging a prior felony conviction elevated the carrying a handgun charge to a Class C felony.

During Newman's jury trial, the State introduced an audiotape and transcript of Newman's statement to Detective Beavers over Newman's objection. Newman was found guilty of aggravated battery, a Class B felony, and carrying a handgun without a license, a Class C felony.[1] He now appeals.

### Discussion and Decision

#### I. Jury Instruction

■ Newman argues that reckless homicide is an inherently lesser-included offense of voluntary manslaughter and therefore, the trial court erred in failing to instruct the jury with regard to reckless homicide.

■ In determining whether a lesser-included offense instruction is appropriate, the trial court conducts a three-part analysis. First, the trial court must determine whether the lesser-included offense is inherently included in the crime charged; if not, it must then determine whether the lesser-included offense is factually included in the crime charged. If either of these two are true, then the trial court must determine whether a serious evidentiary dispute exists whereby the jury could conclude that the lesser offense was committed but not the greater. *Wright v. State,* 658 N.E.2d 563, 566–67 (Ind.1995). The trial court should give a lesser-included offense instruction if it answers the third inquiry affirmatively. *Id.* at 567.

■ To determine whether a lesser-included offense is inherently included in a

1. Newman admitted that he had a prior felony conviction; therefore, his conviction for carrying a handgun without a license was elevated from a Class A misdemeanor to a Class C felony.

charged crime, the trial court must compare the relevant statutes. *Id.* at 566. The requested lesser-included offense is inherently included in the charged crime if either the parties could establish commission of the claimed lesser-included offense by proof of the same material elements or less than all of the material elements of the charged crime, or the only feature distinguishing the claimed lesser-included offense from the charged crime is that a lesser culpability is required to establish commission of the lesser-included offense. *Id.* at 566–67 (citations omitted).

■ Here, the elements of voluntary manslaughter are that the defendant 1) knowingly or intentionally; 2) kills another human being; 3) while acting under sudden heat. Ind.Code § 35–42–1–3. A defendant commits reckless homicide if he 1) recklessly; 2) kills; 3) another human being. Ind.Code § 35–42–1–5. Thus, the element which distinguishes voluntary manslaughter from reckless homicide is the requisite culpability. *See Brown v. State,* 659 N.E.2d 652, 656 (Ind.Ct.App. 1995), *trans. denied.* Therefore, reckless homicide is a lesser included offense of voluntary manslaughter and we must decide whether there is a serious evidentiary dispute about whether Newman knowingly or recklessly killed Beasley.

■ When the trial court has made a determination, as it did here, that no serious evidentiary dispute exists, we review the refusal of the tendered instruction for an abuse of discretion. *Tucker v. State,* 725 N.E.2d 894, 897 (Ind.Ct.App.2000), *trans. denied.* A trial court's consideration of whether a serious evidentiary dispute exists typically requires the trial court to evaluate the weight and credibility of the evidence and then subjectively determine the seriousness of any resulting dispute. *Fish v. State,* 710 N.E.2d 183,

185 (Ind.1999). "Upon appellate review for abuse of discretion, we accord the trial court considerable deference, view the evidence in a light most favorable to the decision, and determine whether the trial court's decision can be justified in light of the evidence and circumstances of the case." *Id.*

A person engages in knowing conduct "if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind.Code § 35–41–2–2(b). A person engages in reckless conduct "if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct." Ind.Code § 35–41–2–2(c).

■ Here, Newman admitted that he pointed the gun at Beasley's shoulder and fired the gun. "When one aims a gun at another person's shoulder or upper chest area and fires it, he or she is reasonably aware of a high probability that the shot may kill." *Etienne v. State,* 716 N.E.2d 457, 463 (Ind.1999). Therefore, the trial court did not err in refusing to give Newman's tendered instruction on reckless homicide as a lesser-included offense of voluntary manslaughter because Newman engaged in knowing behavior. The trial court did not abuse its discretion in finding no serious evidentiary dispute and refusing Newman's tendered instruction.

## II. *Audiotape*

Newman argues that the trial court erred in admitting the audio tape recording of his statement to Detective Beavers. He asserts that the recording was not clear enough to meet the requirements necessary to be admitted. Therefore, Newman claims that the admission of the tape prejudiced him.[2]

2. We note that the trial court instructed the jury that the audio tape was admitted over

The admission or exclusion of evidence lies within the trial court's discretion. *Strangeway v. State*, 720 N.E.2d 724, 726 (Ind.Ct.App.1999). Therefore, on appeal, we review the trial court's evidentiary rulings for abuse of that discretion. *Id.* When a trial court makes a decision that is clearly against the logic and effect of the facts and circumstances before the court, the decision involves an abuse of discretion. *Stone v. State*, 536 N.E.2d 534, 538 (Ind.Ct.App.1989), *trans. denied.*

Newman states that there are five prerequisites for the admission of a tape recording: 1) that the tape is authentic and correct; 2) that the testimony elicited was freely and voluntarily made; 3) that all required warnings were given and all necessary acknowledgements and waivers were given; 4) that it contains no otherwise inadmissible evidence; and 5) that it is of such clarity that it is intelligible and enlightening to the jury. *See* Brief of Appellant at 13, (citing *Lamar v. State*, 258 Ind. 504, 282 N.E.2d 795, 800 (1972)). Thus, Newman argues that the numerous inaudible portions of the tape recording render it unclear so as not to be intelligible and enlightening to the jury.

Certainly, upon a review of the audio tape as well as the transcript which served as an aid to the jury when it listened to the tape, there are many places where the content of the tape is inaudible. However, during Newman's description of the shooting, most of the conversation is audible and clear, particularly with the aid of the transcript. In order for a tape to be admissible, every word does not have to be intelligible. *Lahr v. State*, 640 N.E.2d 756, 761 (Ind.Ct.App.1994), *trans. denied.* It is only necessary that the tape, when taken

as a whole, does not lead the jury to speculate about its contents. *Brown v. State*, 577 N.E.2d 221, 231 (Ind.1991), *cert. denied* 506 U.S. 833, 113 S.Ct. 101, 121 L.Ed.2d 61 (1992). Here, the tape, with the aid of the transcript, would not have led the jurors to speculate about its contents. Given that the account of the crime offered by Newman was sufficiently clear, the audio tape recording was properly admitted.

Further, even assuming Newman is correct, that the tape was too inaudible to be intelligible or enlightening to the jury, Detective Beavers testified as to what Newman told him in the taped conversation. Therefore, that same information was before the jury and any error in admitting the audiotape was harmless. *See* Ind. Evid. R. 103(a) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected . . . .").

Therefore, the admission of the tape did not constitute error and the trial court did not abuse its discretion in admitting it.

### III. *Double Jeopardy*

Newman argues that his right against being placed in double jeopardy was violated because he was convicted of both aggravated battery and carrying a handgun without a license and there was a reasonable probability that the jury used the same evidence to convict him of both offenses. He asserts that the gun used to support the aggravated battery conviction was the same gun used to support the carrying a handgun without a license conviction. Therefore, he contends that the same evidence, the gun, was used to convict him of both crimes and results in

---

defendant's objection, and that the transcript was admitted "solely as an aid to the jury as it relates to [the audio tape.]" R. 347. Because it was admitted solely as an aid to the jury,

the use of the transcript was proper. *See Tobar v. State*, 740 N.E.2d 106, 107 (Ind. 2000).

double jeopardy, requiring that the conviction for carrying a handgun without a license be vacated.

Our Supreme Court has stated that:

[T]wo or more offenses are the "same offense" in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense.

*Richardson v. State,* 717 N.E.2d 32, 49 (Ind.1999) (emphasis in original).

 Under the actual evidence test set forth in *Richardson,* we examine the actual evidence presented at trial to determine whether each challenged offense was established by separate and distinct facts. *Thy Ho v. State,* 725 N.E.2d 988, 991 (Ind.Ct.App.2000). The defendant bears the burden of showing a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense. *Id.*

 Newman was convicted of aggravated battery, which is defined by statute to be committed by "[a] person who knowingly or intentionally inflicts injury on a person that creates a substantial risk of death...." Ind.Code § 35–42–2–1.5. To prove the offense of aggravated battery, the State presented evidence that Newman knowingly inflicted injuries on Beasley which resulted in his death by shooting him with a handgun. Newman was also convicted of carrying a handgun without a license, which requires proof that he carried a handgun "in any vehicle or on or about his person, except in his dwelling, on his property or fixed place of business." *See* Ind.Code § 35–47–2–1. "[O]nce the

State proves that the defendant carried a handgun on or about his person, away from his dwelling or business, the burden shifts to the defendant to establish that he possessed a valid license." *Harris v. State,* 716 N.E.2d 406, 411 (Ind.1999); Ind. Code § 35–47–2–24(a). Newman did not present any evidence to establish that he had a license for the handgun.

Thus, the evidence presented at trial demonstrates that Newman carried a gun, which he used, and for which he did not have a license, to shoot Beasley. We recognize that the same gun is used to support both the aggravated battery and carrying a handgun without a license convictions. However, Newman clearly was carrying the gun prior to the battery and thus, the crime of carrying a handgun without a license was completed prior to the battery. In fact, it was a crime in and of itself even without the battery. It just so happens that the battery is what brought the second offense to attention. Therefore, there is different evidence to support both convictions. However, given the current state of disagreement in our law with respect to the use of a gun and double jeopardy matters, we believe it is important to discuss the situation herein, and how it presents a problem about which the law tends to disagree.

In formulating the state constitutional double jeopardy standard, *Richardson* conducted a thorough review of the history of state double jeopardy jurisprudence, citing, among others, the case of *Davidson v. State,* 99 Ind. 366 (1885). *Davidson* held that unlawfully carrying a deadly weapon and threatening to use a pistol were not the same offense for double jeopardy purposes. However, we do not believe *Davidson* was cited for anything more than a historical review, and especially not as authority regarding how our courts should rule on a similar claim following the *Rich-*

*ardson* double jeopardy test. *Richardson* noted that beginning with *Davidson,* the supreme court "shifted its consideration *away* from the available evidence *to* the statutory requirements." 717 N.E.2d at 46 (emphasis added). Furthermore, *Richardson* noted that the *Davidson* court "looked to the *statutory elements* " of the charged crimes to determine that they were two separate offenses. *Id.* (emphasis added). Therefore, although *Davidson* was not explicitly overruled by *Richardson,* we believe that it was implicitly overruled, in that it was based upon the "statutory elements test" alone, and did not also consider the "actual evidence test." Thus, we do not consider *Davidson* to be controlling precedent for post-*Richardson* cases and it is our view that *Davidson,* as a historical reference, was not intended to create an exception for double jeopardy cases involving guns. *Richardson* remains the test by which *all* double jeopardy claims, both those involving handguns and those not, are to be judged.

A panel of this court recently addressed a claim that convictions of carrying a handgun without a license and robbery while armed with a deadly weapon, that being a handgun, violated double jeopardy under our state constitution. *Ho,* 725 N.E.2d at 992. Applying the *Richardson* actual evidence test, the panel unanimously held that the two crimes are not the same offense for double jeopardy purposes. *Id.* at 993.

> To prove the offense of robbery, as a Class B felony, the State presented evidence that [the defendant] robbed [the victim] while armed with a deadly weapon. That deadly weapon was a handgun. In addition, [the defendant] failed to present evidence that he had a license to carry the handgun.

* * *

> In this case, distinct evidentiary facts were used to prove that [the defendant] committed robbery while armed with a handgun, while a lack of evidentiary facts was used to prove that [the defendant] did not have a license to carry that handgun. [The defendant] has failed to demonstrate a reasonable possibility that the same evidentiary facts may have been used to establish the essential elements of each challenged offense.

*Id.* at 992–93.

We are mindful of other cases which hold that use of the same weapon as an essential element of two crimes constitutes a double jeopardy violation. In *Burnett v. State,* 736 N.E.2d 259 (Ind.2000), the defendant was charged with both pointing a firearm and criminal confinement. The preliminary instructions and the State's proof relied on the single act of pointing a gun at the victim as the basis for both charges. The supreme court held that there was a reasonable possibility that the same evidence was used by the jury to establish both, and therefore, the pointing a firearm conviction was vacated as being in violation of double jeopardy. *Id.* at 263. In *Hatchett v. State,* 740 N.E.2d 920 (Ind. Ct.App.2000), *trans. denied,* the defendant was charged with carrying a handgun without a license and also, because of a prior robbery conviction, with unlawful possession of a firearm as a serious violent felon. We held that there was a reasonable possibility that the evidence used to establish that the defendant carried a handgun without a license was also used to establish that he unlawfully possessed the handgun as a serious violent felon, and we vacated the carrying a handgun without a license conviction. *Id.* at 926. Finally, in *Stafford v. State,* 736 N.E.2d 326 (Ind.Ct. App.2000), *trans. denied,* the defendant was charged with criminal confinement and battery with a deadly weapon. Because "the same actions involving the use

of a rope as the deadly weapon established the elements of both crimes," we held that the two convictions violated double jeopardy. *Id.* at 331. We noted, however, that double jeopardy protections were not implicated by an intimidation conviction because the evidence that supported intimidation, threatening the victim while pulling a deadly weapon, was not the same evidence that supported the convictions of confinement and battery, that is placing the rope around the victim's neck. *Id.* at 331 n. 5.

Thus, we reiterate that the situation presented herein creates a problem for which the law tends to disagree; however, we believe that the use of a gun, as opposed to any other deadly weapon, should not be the determinative factor, but rather the specific evidence of each case must be examined in light of *Richardson.* Here specifically we hold that Newman has failed to show a reasonable probability that the same evidence was used to support both convictions and therefore, we affirm.

### Conclusion

We hold that the trial court did not err in refusing to give Newman's tendered instruction on reckless homicide as a lesser-included offense of voluntary manslaughter nor in admitting the audio tape of his statement. Further, double jeopardy protections were not violated by Newman's convictions of both aggravated battery and carrying a handgun without a license. Accordingly, we affirm.

Affirmed.

DARDEN, J., and RILEY, J., concur.