## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 26 2017, 11:01 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Andrew J. Baldwin
Baldwin Kyle & Kamish, P.C.
Franklin, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Candelario Cruz-Trujillo, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | October 26, 2017 <br><br> Court of Appeals Case No. <br> 41A01-1612-CR-2723 <br><br> Appeal from the Johnson Circuit Court <br><br> The Honorable K. Mark Loyd, Judge <br><br> Trial Court Cause No. <br> 41C01-1510-MR-2 |

**Mathias, Judge.**

[1] Candelario Cruz-Trujillo ("Candelario") appeals his conviction for murder. In this appeal, Candelario claims that the trial court abused its discretion when it

refused to instruct the jury on involuntary manslaughter, voluntary manslaughter, and reckless homicide.

[2] We affirm.

## Facts and Procedural History

[3] In the fall of 2014, Candelario discovered that his wife Isabel was having an affair with Miguel Hernandez ("Hernandez"). Subsequently, Isabel moved out, and their children decided to stay with Candelario. In September 2015, Candelario and Isabel were having disagreements about where the children should live. During this time, Hernandez called Candelario and boasted, "[Candelario] was feeling like a big man taking away the children from [Isabel]." Tr. Vol. III, p. 55. This angered Candelario and on September 12, 2015, he went to Hernandez's apartment "to tell him not to mess with me, that if he wanted to say something, to tell me face to face, not to call me on the phone." *Id.* Candelario waited for Hernandez at his apartment, and when Hernandez arrived, he spotted Candelario, quickly exited his car, and retreated into his apartment before there was a confrontation.

[4] In the following weeks, Candelario noticed cars driving slowly by his home, and he was informed by a neighbor that a few strange men were walking near his property. Because of these events, Candelario illegally purchased a firearm. On September 29, Hernandez called Candelario and the following exchange took place:

> I asked him, what do you want? And he told me, are you scared? And I said, no, I'm not scared of nobody. I told him I want to see him - - I want to see you because I don't want you to be going around my house. And he had fun. He told me that I was stupid, an asshole. I told him, you too. And I told him, if you want to say something, tell it face to face, don't call me on the phone. And by now, I raised my voice, I was more upset. And I hang up.

*Id.* at 66 (errors in original). Later that same evening, Candelario went out to his truck and began drinking heavily. At some point during the night, Candelario severely cut his hand on a broken beer bottle. He went inside and his oldest daughter helped him wrap his wound. His daughter also communicated with Isabel, encouraging her to come assist with Candelario.

[5] Isabel arrived and attempted to take Candelario to the hospital. He refused and told her, "now I'm going to talk to Miguel." *Id*. at 69. Isabel tried to block in Candelario's car, but he maneuvered his truck around her vehicle and traveled to the Four Seasons restaurant, where Hernandez was employed as a cook, around 5:30 a.m. on September 30.

[6] Candelario pulled into the Four Seasons and waited in his truck for Hernandez to arrive. Soon after, Hernandez pulled in and Candelario exited his truck to confront him. Candelario told Hernandez he wanted to talk to him; however, Hernandez began backing up and moving towards the restaurant entrance. Hernandez appeared to grab for something, and Candelario raised his gun and fired several shots at Hernandez. After Hernandez fell to the ground, Candelario shot Hernandez once more in the back of the head. Candelario went

back to his truck and drove away. He was arrested without incident later that day.

[7] The State charged Candelario with murder on October 7, 2015. A three-day jury trial commenced on September 12, 2016, during which the trial court found that the evidence did not warrant jury instructions on involuntary manslaughter, voluntary manslaughter, and reckless homicide. The jury found Candelario guilty, and he was sentenced on November 7 to fifty-six years in the Indiana Department of Correction. Candelario now appeals.

## Discussion and Decision

[8] Candelario claims that the trial court abused its discretion when it failed to instruct the jury on involuntary manslaughter, voluntary manslaughter, and reckless homicide as each is a lesser included offense of murder. Trial courts are provided broad discretion when instructing juries. *Erlewein v. State*, 775 N.E.2d 712, 714 (Ind. Ct. App. 2002), *trans. denied*. When determining whether to give a lesser included offense instruction, trial courts apply the three-part test our supreme court set out in *Wright v. State*, 658 N.E.2d 563 (Ind. 1995). The supreme court succinctly explained this test in *Wilson v. State*:

> The first two parts require the trial court to determine whether the offense is either inherently or factually included in the charged offense. If so, the trial court must determine whether there is a serious evidentiary dispute regarding any element that distinguishes the two offenses. . . . Where a trial court makes such a finding, its rejection of a tendered instruction is reviewed for an abuse of discretion.

765 N.E.2d 1265, 1271 (Ind. 2002) (citations, quotation, and footnote omitted). If the evidence in the record does not support giving an instruction on an inherently or factually included lesser offense, then the trial court should not give it to the jury. *Wright*, 658 N.E.2d at 567.

### I. Involuntary Manslaughter

[9] Murder and involuntary manslaughter are distinguished by the defendant's intent. *Wilson*, 765 N.E.2d at 1271. Murder requires an intent to kill, whereas involuntary manslaughter requires an intent to batter. *Evans v. State*, 727 N.E.2d 1072, 1081 (Ind. 2000). Involuntary manslaughter is not an inherently lesser included offense of murder; however, it is a factually included lesser offense if the charging information alleges that a battery accomplished the killing. *Norris v. State*, 943 N.E.2d 362, 368 (Ind. Ct. App. 2011), *trans. denied*. The charging information here alleges that "on or about September 30, 2015 in Johnson County, State of Indiana, Candelario Cruz-Trujillo did knowingly and/or intentionally kill another human being, to-wit: Miguel Hernandez." Appellant's App. p. 9.

[10] Candelario does not dispute the fact that the charging information fails to allege a battery, rather he argues that the term "charging instrument" as used by the *Wright* court should include both the charging information and the probable cause affidavit.[1] He contends that because the probable cause affidavit indicates

---

[1] Candelario is not the first individual to present this argument, and our courts and legislature have consistently separated the probable cause affidavit from the charging instrument. *E.g.*, Ind. Code § 35-34-1-

that Candelario committed battery by shooting Hernandez, then the jury should have been instructed on involuntary manslaughter. We disagree for two reasons.

First, the wording of the charging information foreclosed the opportunity for Candelario to seek an instruction on involuntary manslaughter. The *Wright* court explained, "the State cannot draft an information that forecloses an instruction on an inherently lesser included offense of the crime charged . . . ." 658 N.E.2d at 569. However, "[w]hat is clear . . . is that the State may only foreclose instruction on a lesser offense that is not inherently included in the crime charged by omitting from a charging instrument factual allegations sufficient to charge the lesser offense." *Id.* at 570.

Candelario was charged with "knowingly and/or intentionally" killing Hernandez. Appellant's App. p. 9. There is no reference in the charging information to a battery that would provide a basis for an involuntary manslaughter instruction. Candelario notes that "the probable cause affidavit indicates that [Candelario] both attempted and committed the crime of battery by shooting Miguel Hernandez." Appellant's Br. at 18. Despite Candelario's reliance on the probable cause affidavit, it was well within the State's discretion

---

2(a) (there is no requirement for a narrative probable cause affidavit in the statute specifying the contents of the charging information); Ind. Code § 35-34-1-2.4(a) (separately listing an "indictment, information, pleading, motion, petition, probable cause affidavit" when discussing verified documents); *Schweitzer v. State*, 531 N.E.2d 1386, 1388 (Ind. 1989) (clarifying that "The probable cause affidavit relates to the pretrial detention of the defendant, not to the charging instrument."); *State v. Laker*, 939 N.E.2d 1111, 1113 (Ind. Ct. App. 2010) (identifying the different purposes for a charging instrument and the probable cause affidavit), *trans. denied*. We decline to disrupt this precedent here.

to draft the charging information in such a way as to foreclose the opportunity for Candelario to seek a conviction on involuntary manslaughter. *See Champlain v. State,* 681 N.E.2d 696, 702 (Ind. 1997) (observing that where the information alleged only that defendant "did knowingly kill another human being," the information specifically did not assert a battery, and therefore, involuntary manslaughter was not a factually included lesser offense of murder).

[13] Second, the record before us reveals *no* evidentiary dispute concerning whether Candelario intended to kill or batter Hernandez. We have previously held that "The intent to kill may be inferred from the use of a deadly weapon in a manner likely to cause death or great bodily injury, in addition to the nature of the attack and circumstances surrounding the crime." *Fuentes v. State*, 10 N.E.3d 68, 75 (Ind. Ct. App. 2014), *trans. denied*. Additionally, our supreme court has held that firing a weapon in the direction of a victim is substantial evidence from which a jury could infer intent to kill. *Leon v. State*, 525 N.E.2d 331, 332 (Ind. 1988).

[14] It is undisputed that Candelario raised his firearm and fired several shots at Hernandez from close range. After Hernandez fell, Candelario shot him once more in the head before fleeing. The evidence thus did not warrant an instruction on involuntary manslaughter, and the trial court did not abuse its discretion by refusing to give it.

## II. Voluntary Manslaughter

Murder and voluntary manslaughter are distinguished by evidence of sudden heat, "which is an evidentiary predicate that allows mitigation of a murder charge to voluntary manslaughter." *Washington v. State*, 808 N.E.2d 617, 625 (Ind. 2004). Our supreme court has characterized sudden heat "as anger, rage, resentment, or terror sufficient to obscure the reason of an ordinary person, preventing deliberation and premedication . . . and rendering a person incapable of cool reflection." *Id.* at 626. Voluntary manslaughter *is* an inherently included offense of murder; however, an instruction on voluntary manslaughter is appropriate only "if there exists evidence of sufficient provocation to induce passion that renders a reasonable personal incapable of cool reflection." *Id.*

Candelario argues that "A reasonable person could conclude that [Candelario] was terrified" and that "It is certainly reasonable that this terror could obscure the judgment of [Candelario] to the point that he even mistook keys for a hand gun." Appellant's Br. at 20. Candelario classifies the circumstances surrounding the shooting as "appreciable evidence of sudden heat" and thus claims the trial court abused its discretion when it did not instruct the jury on voluntary manslaughter. *Id.*

To support his argument, Candelario cites to this court's decision in *Collins v. State*, 966 N.E.2d 96 (Ind. Ct. App. 2012). In that case, Collins and her husband got into a heated argument. *Id.* at 100–01. The fight escalated quickly to the point where Collins's husband grabbed a knife and slashed his wife, cutting her

several times. *Id.* at 101. Collins broke away from her husband, ran upstairs to retrieve a gun, and shot and killed him. We held that the trial court properly instructed the jury on voluntary manslaughter because there was "sufficient evidence from which a jury could conclude that Collins acted in sudden heat." *Id.* at 103. We do not have similar evidence in the case before us.

[18] The record here is filled with evidence that Candelario's impetus to kill did not suddenly arise in response to a contemporaneous event. *Suprenant v. State*, 925 N.E.2d 1280, 1284 (Ind. Ct. App. 2010), *trans. denied*. Candelario contemplated his actions for several hours before confronting Hernandez. After a sleepless night, he consciously drove his truck to wait for Hernandez at his place of employment. *See Washington*, 808 N.E.2d at 626 (holding that an instruction on voluntary manslaughter was not warranted where the evidence showed a degree of deliberation and cool reflection). When Hernandez saw Candelario, Hernandez began backing away to head into the restaurant. It was at this point that Candelario raised his gun and shot Hernandez multiple times. Once Hernandez fell, Candelario fired a final shot into the back of Hernandez's head.

[19] There is nothing in the record to indicate Candelario and Hernandez engaged in any type of confrontation prior to the shooting. While Candelario testified that he felt Hernandez could have had a gun, he also testified that he never saw a weapon. Further, Hernandez did not provoke Candelario prior to the shooting. *See Suprenant*, 925 N.E.2d at 1282–83 (explaining that the provocation required for voluntary manslaughter must be something more than mere words "sufficient to obscure the reason of an ordinary man."). Simply put, there is no

evidence in the record from which a reasonable person could conclude that Candelario acted in sudden heat. The trial court properly rejected Candelario's voluntary manslaughter instruction.

### III. Reckless Homicide

Finally, Candelario argues that the trial court should have given the jury an instruction on reckless homicide. Our supreme court has explained:

> [T]he only element distinguishing murder and reckless homicide is the defendant's state of mind: reckless homicide occurs when the defendant "recklessly" kills another human being, and murder occurs when the killing is done "knowingly" or "intentionally." Reckless conduct is action taken in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct. By contrast, a person engages in conduct "knowingly" if the person is aware of a "high probability" that he or she is doing so. Thus, reckless homicide is an inherently included lesser offense of murder. The determinative issue here is whether the evidence produced a serious evidentiary dispute concerning [the defendant]'s state of mind that would justify giving the requested instruction.

*Webb v. State*, 963 N.E.2d 1103, 1106 (Ind. 2012) (citations and footnote omitted).

Candelario reasons that "Confronting a man that is having an affair with your wife while intoxicated and armed with a revolver is reckless behavior and a genuine issue exists over whether the killing was premeditated or reckless." Appellant's Br. at 22. We disagree.

[22] The State presented ample evidence that Candelario intentionally killed Hernandez. Candelario pointed the gun at Hernandez and shot him multiple times. Candelario also admitted that he shot Hernandez in the head after Hernandez fell to the ground. Candelario testified:

> I'm going to talk to somebody, and if he resists me, I had the gun, and it was to shoot. It was to use it. I'm going to see him. But if he wants to fight with me, shoot, I can use the gun. That's why I had it, to shoot.

Tr. Vol. III, p. 88. The evidence here does not produce an evidentiary dispute concerning whether Candelario acted knowingly or recklessly. *See Newman v. State*, 751 N.E.2d 265, 269 (Ind. Ct. App. 2001) (instruction on reckless homicide was not warranted where defendant admitted to pointing and firing a gun at the victim), *trans. denied*. Therefore, the trial court properly rejected Candelario's reckless homicide instruction.

## Conclusion

[23] Under these facts and circumstances, the trial court did not abuse its discretion when it refused to instruct the jury on involuntary manslaughter, voluntary manslaughter, and reckless homicide.

[24] Affirmed.

Vaidik, C.J., and Crone, J., concur.