Jessie Lee **WRIGHT**, Appellant,

v.

**STATE of Indiana,** Appellee.

No. 45S03–9504–CR–418.

Supreme Court of Indiana.

Nov. 17, 1995.

Nathaniel Ruff, Appellate Public Defender, Crown Point, for Appellant.

Pamela Carter, Attorney General, Dana A. Childress–Jones, Deputy Attorney General, Indianapolis, for Appellee.

## ON PETITION TO TRANSFER

SULLIVAN, Justice.

In a prosecution for murder, a jury convicted Jessie Lee Wright of Reckless Homicide.[1] The trial court sentenced Wright to eight years in prison. A divided panel of the Court of Appeals reversed Wright's conviction on the ground that the trial court improperly instructed the jury that it could convict Wright of the lesser included offense of Reckless Homicide. *Wright v. State* (1994), Ind.App., 643 N.E.2d 417, *reh'g denied.* We write to resolve the unfortunate confusion that has arisen in the cases that

---

1. Indiana Code § 35–42–1–5 (1993).

address when a trial court should instruct juries on lesser included offenses.

### Facts

The facts of this case are that Wright and his nephew Richard were together at a family gathering on the evening of July 4, 1993. Wright and his nephew began to argue. At some point during the argument, Wright went upstairs. A little while later Wright came downstairs with his hands in his pockets. The argument resumed and, after some pushing, Wright stabbed Richard. Richard was taken to a hospital, where he died. The cause of death was a stab wound to the chest.

### I

The cases of this court and of the Court of Appeals treating the question of whether a trial court should or should not have instructed a jury on a lesser included offense of that charged are, if not myriad, legion. The issue is potentially live in any criminal prosecution.

■ In every criminal case, an accused is entitled to clear notice of the charge or charges against which the State summons him to defend. Ind. Const. art 1, § 13; *Blackburn v. State* (1973), 260 Ind. 5, 11, 291 N.E.2d 686, 690, *appeal dismissed, Blackburn v. Indiana*, 412 U.S. 925, 93 S.Ct. 2755, 37 L.Ed.2d 152. Clear notice serves the dual purposes of allowing an accused to prepare his defense and of protecting him from being placed twice in jeopardy for the same offense. When, therefore, the issue is under what circumstances a trial court should instruct a jury on a lesser included offense of that charged, it is essential that the appellate courts of this state speak with one voice. What we say will determine both how prosecutors draft indictments and informations and what notice defendants in criminal cases will have of the charges brought against them. Due process will brook no confusion on the subject. *See Jones v. State* (1982), Ind., 438 N.E.2d 972, 975.

### A

In this case, the information charging Wright with Murder read:

Bruce L. Outlaw, Sr., upon oath, says that on or about July 4, 1993, in the County of Lake, State of Indiana, Jessie Lee Wright did knowingly or intentionally kill Richard Wright by means of a knife, a deadly weapon, contrary to IC 35-42-1-1 and against the peace and dignity of the State of Indiana.

Indiana Code § 35-42-1-1 (1993), which defines the crime of Murder provides in part: "a person who: (1) knowingly or intentionally kills another human being ... commits murder, a felony." The majority of the Court of Appeals panel reversed Wright's conviction for Reckless Homicide because, it said, the language of the charging information closely tracked the language of the murder statute and so showed an intent on the part of the State to charge only the greater offense of Murder and not the lesser offense of Reckless Homicide. It was, the Court of Appeals said, a violation of due process and fundamental error to convict Wright of a crime with which he had not been charged. *Wright,* 643 N.E.2d at 419. As authority for its decision that the State had foreclosed the possibility of a conviction on a lesser included offense by the way it drafted the information in this case, the majority relied on *Sills v. State* (1984), Ind., 463 N.E.2d 228, 235, and *Slayton v. State* (1984), Ind.App., 471 N.E.2d 1154, 1157, which itself relied on *Sills.*

Judge Garrard dissented, saying that this court misspoke itself in *Sills* and that *Sills* and its progeny should be "strictly limited to their facts." *Wright,* 643 N.E.2d at 420 (Garrard, J., dissenting). Judge Garrard is not the first member of the Court of Appeals to have said exactly this, *see Crawford v. State* (1987), Ind.App., 502 N.E.2d 1361, 1365, *reh'g denied, trans. denied,* or to have sharply criticized the descendants of *Sills.* See *Johnson v. State* (1992), Ind.App., 594 N.E.2d 817, 820 n. 3 (refusing to follow *Crawford* or *O'Grady v. State* (1985), Ind.App., 481 N.E.2d 115, *reh'g denied, trans. denied* ). Nor is this the first time Judge

Garrard has opposed the application of *Sills* or one of its offspring. See *Aschliman v. State* (1991), Ind.App., 578 N.E.2d 759, 767 (Garrard, J., dissenting), *trans. granted and opinion vacated* (1992), Ind., 589 N.E.2d 1160; *Lynch v. State* (1990), Ind.App., 552 N.E.2d 56, 62 (Garrard, J., dissenting), *reh'g denied, trans. granted and opinion vacated* (1991), Ind., 571 N.E.2d 537); *Johnson v. State* (1990), Ind.App., 553 N.E.2d 187, 190 (Garrard, J., dissenting).

For our own part, in *Whipple v. State* (1988), Ind., 523 N.E.2d 1363, 1372 n. 3, we noted that there had developed in the cases what we called "certain variances" in the treatment of instructions on lesser included offenses. Because those "variances" were not centrally at issue in *Whipple,* we chose not to resolve them there. *See id.* They are, however, squarely at issue in this case, and we now resolve the conflict in the cases.

**B**

Lest there be any further confusion, we first set out the correct analysis that a trial court is to perform when it is called upon by a party to instruct a jury on a lesser included offense of the crime charged.

First, a trial court must compare the statute defining the crime charged with the statute defining the alleged lesser included offense. If (a) the alleged lesser included offense may be established "by proof of the same material elements or less than all the material elements" defining the crime charged, Ind.Code § 35-41-1-16(1) (1993), *Aschliman v. State* (1992), Ind., 589 N.E.2d 1160, 1161, or (b) the only feature distinguishing the alleged lesser included offense from the crime charged is that a lesser culpability is required to establish the commission of the lesser offense, Ind.Code § 35-41-1-16(3) (1993), *Holder v. State* (1991), Ind., 571 N.E.2d 1250, 1256, then the alleged lesser included offense is *inherently* included in the crime charged.[2] If an offense is inherently

---

2. Indiana Code § 35-41-1-16(3) also defines a lesser included offense as one that "differs from the offense charged only in respect that a less serious harm or risk of harm to the same person, property, or public interest...." We leave for an appropriate case the decision whether a lesser

included offense of this category should be treated as an inherently lesser included offense for the purpose of deciding whether to instruct a jury on lesser included offenses. *See Johnson v. State* (1990), Ind.App., 553 N.E.2d 187, 189–91 (Garrard, J, dissenting).

included in the crime charged, then a trial court should proceed to step three below. We emphasize here that the wording of a charging instrument *never* forecloses or precludes an instruction on an inherently lesser included offense. *Aschliman,* 589 N.E.2d at 1161.

■ Second, if a trial court determines that an alleged lesser included offense is not inherently included in the crime charged under step one, then it must compare the statute defining the alleged lesser included offense with the charging instrument in the case. If the charging instrument alleges that the means used to commit the crime charged include all of the elements of the alleged lesser included offense, then the alleged lesser included offense is *factually* included in the crime charged, and the trial court should proceed to step three below. *Lynch v. State* (1991), Ind., 571 N.E.2d 537, 538. If the alleged lesser included offense is neither *inherently* nor *factually* included in the crime charged, then the trial court should not give a requested instruction on the alleged lesser included offense. *See Straub v. State* (1991), Ind., 567 N.E.2d 87, 90.

■ Third, if a trial court has determined that an alleged lesser included offense is *either* inherently *or* factually included in the crime charged, it must look at the evidence presented in the case by both parties. If there is a serious evidentiary dispute about the element or elements distinguishing the greater from the lesser offense and if, in view of this dispute, a jury could conclude that the lesser offense was committed but not the greater, then it is reversible error for a trial court not to give an instruction, when requested, on the inherently or factually included lesser offense. *Aschliman,* 589 N.E.2d at 1162; *Lynch,* 571 N.E.2d at 539. If the evidence does not so support the giving of a requested instruction on an inherently or factually included lesser offense, then a trial court should not give the requested instruction.[3]

At least since our decision in *Lawrence v. State* (1978), 268 Ind. 330, 337, 375 N.E.2d 208, 212, analysis of this issue has spoken of two steps. We believe that the explicit three-step analysis above should eliminate any confusion that may have been caused by *Lawrence*'s two-step approach.

C

■ We now apply the first step of the analysis described above to the facts of this case. As we have already said, Indiana's murder statute provides in part: "a person who: (1) knowingly or intentionally kills another human being ... commits murder, a felony." Ind.Code § 35–42–1–1. Indiana Code § 35–42–1–5 (1993) defines Reckless Homicide and provides: "A person who recklessly kills another human being commits reckless homicide, a Class C felony." A comparison of the murder and reckless homicide statutes shows that the only feature distinguishing Murder from Reckless Homicide is the lesser culpability required to establish the commission of Reckless Homicide. *Holder,* 571 N.E.2d at 1256. Reckless Homicide is, therefore, an inherently included offense of Murder. Ind.Code § 35–41–1–16(3), *Holder,* 571 N.E.2d at 1256. Because Reckless Homicide is an inherently included offense of Murder, an information charging Murder cannot be drafted so as to preclude an instruction on Reckless Homicide. *Aschliman,* 589 N.E.2d at 1161.

■ The Court of Appeals was unwarranted in reversing Wright's conviction for Reckless Homicide on the grounds that the information charging Wright with Murder closely tracked the language of the murder statute. If the evidence warrants it, a requested instruction on Reckless Homicide should always be given in a case in which Murder has been charged. And even had the offense on which the trial court instructed the jury in this case been neither inherently nor factually included in the offense

---

**3.** Justice DeBruler's concurring opinion argues that trial courts should not undertake this third step but rely on the jury's verdict to resolve whether the lesser offense was committed but not the greater. We find much merit in his recommended approach but decline to adopt it here, in part because it raises certain procedural questions that might well be better answered by rule. As such, we have referred the issue to our Rules Committee. We note that adoption of Justice DeBruler's approach would not change the outcome of this case.

charged, it was not fundamental error to convict Wright of that lesser offense. *Majko v. State* (1987), Ind., 503 N.E.2d 898, 902. A defendant must object to such an instruction in order to preserve the issue for appeal.

### D

We now discuss the proper interpretation of our statement in *Jones v. State, supra,* that "the state through its drafting can foreclose as to the defendant the tactical opportunity to seek a conviction for a lesser offense." 438 N.E.2d at 975. We believe this statement was improperly applied in *Sills v. State, supra,* and in *Compton v. State* (1984), Ind., 465 N.E.2d 711, causing much of the later confusion in the cases.

*Sills* was a murder case, and one of the issues presented was whether Sills had been entitled to an instruction on Involuntary Manslaughter because, the appellant argued, Involuntary Manslaughter is a lesser included offense of Murder. A plurality of this court said the following:

> In *Jones v. State,* (1982) Ind., 438 N.E.2d 972, we held that "the state through its drafting can foreclose as to the defendant, the tactical opportunity to seek a conviction for a lesser offense. The point is that absolute discretion rests in the state to determine the crime(s) with which a defendant will be charged." *Id.,* 438 N.E.2d at 975. The information in this case charged that:

> > "On or about the 7th day of September, 1981, in Huntington County, in the State of Indiana, Shawn Lynn Sills did knowingly or intentionally kill another human being, Mary Haines, by striking and beating at and against the body of the said Mary Haines with his fists and did then and there and thereby cause said Mary Haines to die.

> > "All of which is contrary to the form of the Statute in such cases made and provided, to-wit: Ind.Code 35–42–1–1 and against the peace and dignity of the State of Indiana."

> It is clear that the state sought only to charge for murder. The defendant cannot inject the lesser offense, since this would allow the jury to return a compromise verdict. *Jones v. State; Hester v. State,* (1974) 262 Ind. 284, 315 N.E.2d 351.

463 N.E.2d at 235.

In *Compton,* the defendant, who had been charged with Burglary and Theft, requested instructions on the offenses of criminal trespass and criminal conversion. The trial court refused the requested instructions, and we analyzed the claim of error as follows:

> In *Lawrence v. State* (1978), 268 Ind. 330, 375 N.E.2d 208, we discussed the two step analysis for determining the propriety of instructions on lesser included offenses. The first step involves examining the statutes involved and the charging information, while the second involves examining the evidence to determine whether the facts would support the instruction. Both of these steps must be satisfied before an instruction is proper. *Roddy v. State* (1979), Ind.App., 394 N.E.2d 1098. *Defendant here has failed to pass the first step.* An examination of the information in this case shows that defendant was charged with burglary and theft. The information quoted the statute almost verbatim and there is no doubt that the prosecutor was not attempting to seek a conviction on a lesser included offense. As we stated in *Jones v. State,* (1982) Ind., 438 N.E.2d 972, "the state through its drafting can foreclose as to the defendant, the tactical opportunity to seek a conviction for a lesser offense. The point is that absolute discretion rests in the state to determine the crime(s) with which a defendant will be charged." *Id.,* 438 N.E.2d at 975. *Thus, notwithstanding that the evidence in this case may have supported an instruction on a lesser offense,* defendant was not entitled to have the instructions given to the jury.

*Compton,* 465 N.E.2d at 713 (emphases added).

Both *Sills* and *Compton* take as their point of departure that statement in *Jones* that "the state through its drafting can foreclose as to the defendant, the tactical opportunity to seek a conviction for a lesser offense." *Id.* at 975. In the context of the case the *Jones* court was called upon to decide, this was a

correct and appropriate statement of the law. Jones had been charged with Burglary, and he requested an instruction on Criminal Trespass. The *Jones* court concluded that the State had not, by the way it drafted the information, foreclosed an instruction on Criminal Trespass: "Although criminal trespass is not an inherently included offense of burglary," *compare now* Ind.Code Ann. § 35–43–2–2(a)(4) (West Supp.1994) with Ind. Code § 35–43–2–1 (1993), "looking at both the statutes and the instrument by which the defendant was charged, it is clear that if he was guilty of the burglary, he was also guilty of a criminal trespass." *Jones,* 438 N.E.2d at 976.

There are two points to be taken from *Jones:* (i) the State cannot draft an information that forecloses an instruction on an inherently lesser included offense of the crime charged, *accord Aschliman,* 589 N.E.2d at 1161; and (ii) although the State may, by proper drafting of a charging instrument, avoid charging a factually included offense of the crime charged, it did not do so in that case. *Accord, Lynch,* 571 N.E.2d at 538–39.

The situation in *Compton* was similar, but critically different. Jones had only been charged with Burglary; he requested an instruction on Criminal Trespass. Compton had been charged with both Burglary and Theft; he requested instructions on *both* Criminal Trespass *and* Criminal Conversion. We have no quarrel with the proposition that the information charging Compton with Burglary did not *factually* include Criminal Trespass as a lesser offense. But the relationship between Theft and Criminal Conversion is paradigmatically that of a greater to an *inherently* lesser included offense. *Aschliman,* 589 N.E.2d at 1161. A person commits Theft by knowingly or intentionally exerting unauthorized control over the property of another person with intent to deprive the other person of any part of the property's value or use. Ind.Code § 35–43–4–2(a) (1993). A person commits Criminal Conversion also by exerting unauthorized control over the property of another person, but there need not be any intent to deprive that other person of the property's value or use.

Ind.Code § 35–43–4–3 (1993). Thus, when the *Compton* court said that the trial court properly refused the requested instruction on Criminal Conversion because of the way the State had drafted the information, it said that the State may foreclose an instruction on an *inherently* lesser included offense by the way it drafts an information. This was wrong.

We now return to *Sills,* in which the defendant was charged with Murder, and he requested an instruction on Involuntary Manslaughter. Involuntary Manslaughter is not an inherently included offense of Murder. *Compare* Ind.Code § 35–42–1–4 (1993) with Ind.Code § 35–42–1(1). As we said in *Lynch:*

> Involuntary manslaughter is defined as occurring when a person kills another human being while committing or attempting to commit a battery, and contemplates an incidental killing that occurs during a battery. Battery is defined as knowingly or intentionally touching another person in a rude, insolent or angry manner. Ind.Code § 35–42–2–1.

571 N.E.2d at 539 (some citations omitted). Because the killing in *Lynch* was accomplished by a touching, Involuntary Manslaughter was a factually included offense of Murder. *See id.*

The information charging Sills with Murder read in part:

> Shawn Lynn Sills did knowingly or intentionally kill another human being, Mary Haines, *by striking and beating at and against the body of the said Mary Haines with his fists* and did then and there and thereby cause said Mary Haines to die.

*Sills,* 463 N.E.2d at 235 (emphasis added). Thus, when the *Sills* plurality said that by the way it drafted the information, which clearly alleged a battery, the State foreclosed an instruction on Involuntary Manslaughter, it said that the State may foreclose instruction on a lesser offense *factually* included in a charging instrument so long as the charging instrument closely tracks the statute defining the crime charged. This was wrong as well.

Taken together, *Compton* and *Sills* stand for the misstatement of the law that if a charging instrument closely tracks the statutory language defining the crime charged, a trial court should *never* instruct a jury on a lesser included offense. What is clear, however, from *Jones* is that the State may only foreclose instruction on a lesser offense that is not inherently included in the crime charged by omitting from a charging instrument factual allegations sufficient to charge the lesser offense.

### E

In this highly technical area of pleading and jury instruction, a case may rarely be "limited to its facts." Although we think it should have been apparent that *Lynch* overruled *Sills* and that *Aschliman* overruled *Compton*, it is certainly apparent that *Sills* and *Compton* cannot rationally coexist with *Lynch* and *Aschliman* as precedent upon which the courts and lawyers of this state may rely. Therefore, to the extent—but only to the extent—that they say, imply, or suggest that prosecutors may, by drafting a charging instrument to track the statutory language defining the crime charged, foreclose or preclude an instruction on either an inherently or factually[4] included offense of the crime charged, we explicitly overrule the following cases of this court: *Avance v. State* (1991), Ind., 567 N.E.2d 1149, 1151–52; *Reinbold v. State* (1990), Ind., 555 N.E.2d 463, 466; *Yawn v. State* (1989), Ind., 539 N.E.2d 473, 474; *Macon v. State* (1988), Ind., 529 N.E.2d 343, 344; *Decker v. State* (1988), Ind., 528 N.E.2d 1119, 1121; *Wedmore v. State* (1988), Ind., 519 N.E.2d 546, 547; *Mueller v. State* (1988), Ind., 517 N.E.2d 788, 792; *Elmore v. State* (1988), Ind., 515 N.E.2d 1388, 1390; *Majko v. State* (1987), Ind., 503 N.E.2d 898, 902; *Dorsey v. State* (1986), Ind., 490 N.E.2d 260, 268; *Vincent v. State* (1986), Ind., 489 N.E.2d 49, 52; *Counceller v. State* (1984), Ind., 466 N.E.2d 456, 462; *Compton v. State* (1984), Ind., 465 N.E.2d 711, 713; *Sills v. State* (1984), Ind., 463 N.E.2d 228,

235; *Sims v. State* (1983), Ind., 456 N.E.2d 386, 388; and *State v. Harner* (1983), Ind., 450 N.E.2d 1005, 1006.

To the same extent—but only to the same extent—we disapprove the following cases of the Court of Appeals: *Robertson v. State* (1995), Ind.App., 650 N.E.2d 1177, 1182, *trans. denied; Whitt v. State* (1995), Ind.App., 645 N.E.2d 677, *trans. granted, decision pending; Johnson v. State* (1990), Ind.App., 553 N.E.2d 187; *Crawford v. State* (1987), Ind.App., 502 N.E.2d 1361, *trans. denied; O'Grady v. State* (1985), Ind.App., 481 N.E.2d 115; *Snell v. State* (1984), Ind.App., 472 N.E.2d 215, 217 n. 1; and *Slayton v. State* (1984), Ind.App., 471 N.E.2d 1154, 1155.

In overruling or disapproving these cases, we note two things. First, they represent a small fraction of the cases decided by this court and the Court of Appeals that deal with instructions on lesser included offenses. Second, not all of the cases overruled or disapproved above stand unambiguously on the dictum in *Jones* that *Sills* and *Compton* misappropriated. But *Sills* and *Compton* have thrived on ambiguity, and we feel compelled to mention all of these cases explicitly so that any ambiguity and, hence, *Sills*'s and *Compton*'s vitality come to an end.

### II

The sole issue that Wright himself raises in his appeal is whether it was error for the trial court to instruct the jury on the lesser included offenses of Murder after the jury had begun its deliberations.

### A

The State charged Wright by information with Murder.[5] After the jury had begun its deliberations, it sent a note to the judge that asked: "Do we have to find the defendant guilty of murder or are we allowed use a lesser charge?" The trial court called the jury into the courtroom, and the following discussion between the trial court and the jury took place:

---

4. *Sills* stands for the proposition that an information cast in the words of the murder statute *per se* forecloses instruction on the lesser offense of Involuntary Manslaughter even though the

information alleges a battery. *Lynch* says otherwise and is the law.

5. Ind.Code § 35–42–1–1 (1993).

Trial court: So that we clearly understand your question, it's written to me as: "Do we have to find the defendant guilty of murder or are we allowed to use a lesser charge." It may not seem it, but that's a very broad question from a lawyer's point of view. Can you give me some idea of what you are asking me?

Foreman: Your Honor, the basic question is do we have a choice of any charge other than murder?

Trial Court: I believe that the parties would not disagree with me answering this initially this way. You are the judges of the law.

Juror Nine: That is the way I interpret it.

Trial Court: But what further guidance would you seek of me?

Juror Nine: I would like to ask the state, do we have the option as a jury of deciding reckless homicide, specifically.

Trial Court: I would have to give you instructions on exactly what the legal elements of that offense is. Without that offense being defined to you under law, or other offenses being defined to you under law, you would just be following your instinctive understanding of what the offense means by definition. I'd have to give you the legal definition.

Juror Nine: Can we, as the jury, ask you to give a definition of reckless homicide?

Trial Court: Counsel, approach.

In the conversation that followed outside the hearing of the jury, defense counsel suggested that the trial court had no choice other than to give the jury the instruction it had requested on reckless homicide. The prosecutor objected to giving the instruction because, it seemed to her, such an instruction was not supported by the evidence, and because she would have, with the case closed for both sides, no opportunity to argue to the jury why it should not convict Wright of a lesser offense.

After a recess, again on the record and within the hearing of the jury, the trial court

asked, "Mr. Foreman, the question that I have for you, that I need to resolve in my mind is, is the jury asking me to define one particular kind of homicide or the different kinds of homicide."

"Different kinds," the foreman responded.

After some further discussion outside the presence of the jury, and over the repeated objections of both defense counsel and the prosecutor, the trial court read to the jury the statutes defining the offenses of Voluntary Manslaughter, Involuntary Manslaughter, and Reckless Homicide. It also read to the jury the statutory definition of recklessness.[6]

After the jury had deliberated two more hours with its new instructions, and at a point the trial court needed to decide whether to send the jury to a hotel for the night, the trial court summoned the jury into the court room and asked each juror whether he or she thought a verdict was reasonably possible. Nine of the jurors said "yes" or "maybe;" three said "no."

In a bench conference, the trial court asked both counsel for Wright and the prosecutor what they thought. Wright's lawyer said, "From what I just heard, your Honor, I think a verdict can come out of this if they're allowed to deliberate further." When the trial court suggested that it might declare a mistrial and set a retrial of the case for the following Monday, Wright's lawyer said, "But to do that, the State now has the opportunity to fill any holes...."

The bench conference was interrupted, and Juror Nine asked if the jury could return a verdict of guilty of Reckless Homicide. The trial court said that it could, whereupon it again asked each juror whether he or she thought a verdict reasonably possible. All twelve jurors answered "yes."

After the jury had again retired to deliberate, the trial court said, "The record needs to be clear as to where I stand on this. I'm troubled by the whole procedure. The only reason I continue to allow the trial to pro-

---

**6.** Indiana Code § 35–41–2–2 (1993) defines recklessness and provides: "A person engages in conduct "recklessly" if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct."

ceed under these circumstances is because it is at the defendant's request that this be done. Mr. Peteet, are we clear on that?"

Wright's lawyer answered, "That's fine, your Honor."

The jury convicted Wright of Reckless Homicide. When the verdict was announced, rather than move for a mistrial or a directed judgment of acquittal, Wright moved that the trial court accept the jury's verdict, and the trial court granted the motion.

B

Wright argues that when a jury, after it has begun its deliberations, has a question of the sort it had in this case, the trial court normally should simply reread to it all of the final instructions without further comment, citing *Lewis v. State* (1981), Ind., 424 N.E.2d 107, 111.[7] We think it utterly apparent, however, that Wright waived any objection to the reinstruction of the jury—including his original objections when the trial court initially proposed reading the statutes defining all of the lesser included offenses of Murder—when the trial court offered to declare a mistrial and to set a date for retrial, and Wright declined that offer. Having made the tactical decision to go forward with the jury as reinstructed, Wright may not now claim on appeal that to go forward was reversible error.

*Conclusion*

Accordingly, having granted transfer and vacated the opinion of the Court of Appeals, Ind.Appellate Rule 11(B)(3), we affirm Wright's conviction for Reckless Homicide.

SHEPARD, C.J., and DICKSON and SELBY, JJ., concur.

DeBRULER, J., concurs with separate opinion.

DeBRULER, Justice, concurring.

If a lesser offense is "inherently" or "factually" included in a charged crime, and a prima facie case of the charged crime has been presented by the State, the State or the defendant should be entitled to an instruction on such lesser offense. In my opinion, long held, *Jones v. State* (1982), Ind, 438 N.E.2d 972 (DeBruler, J., concurring in result), the additional requirement of having trial judges also evaluate the evidence, lacks significant value in the administration of the criminal law. The requirement itself rests upon the mistaken belief that unless judges restrict the use of lesser included offense instructions, based upon each particular judge's view of the value of the State's prima facie case, juries will seize upon such instructions and render evil "compromise verdicts." *Hester v. State* (1974), 262 Ind. 284, 315 N.E.2d 351; *Hash v. State* (1972), 258 Ind. 692, 284 N.E.2d 770. I did not share in this distrust of juries as a trial judge, and I do not share it now as a judge of this Court. Juries have the right to disbelieve all or any part of the State's prima facie case. Juries strive mightily to follow the law as given them by the court. Very occasionally, a jury may act out of passion or prejudice. Such rare events do not justify the costs to the criminal justice system of regular judicial intervention of the sort required by this rule.

I renew consideration of this bedrock matter, although I deem myself bound by stare decisis to interpret and uphold the rule, because this case is undoubtedly a turning point case.