v.

**STATE of Indiana, Appellee.**

**No. 49A04–0302–JV–73.**

Court of Appeals of Indiana.

Sept. 4, 2003.

Joel M. Schumm, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Nandita G. Shepherd, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge.

A.H. appeals from the juvenile court's true finding that he possessed a destructive device, an act which is a Class C felony if committed by an adult.[1] He presents two issues for our review, which we restate as whether the evidence was sufficient to support the true finding and whether the sentence was proper.

We reverse and remand.

Fourteen-year-old E.L. learned from his brother that if one places aluminum foil and "Works" toilet bowl cleaner inside a plastic two-liter bottle and then shakes the bottle, the bottle will burst with a loud "boom."[2] Transcript at 19. E.L. had attempted the process on his own, but it had not worked. Subsequently, on September 4, 2002, he went to the home of his friend, thirteen-year-old A.H. While there, A.H., E.L., and E.H., A.H.'s brother, attempted to prepare such a bottle. They mixed the ingredients just as E.L. had learned and placed the bottle into a hole in A.H.'s backyard. They then went a safe distance from the bottle and waited for it to explode.

Victoria Bullock, a neighbor of A.H., testified that she heard something which sounded louder than a shotgun. Ms. Bull-

---

1. Ind.Code § 35–47.5–5–2 (Burns Code Ed. Supp.2002).

2. For lack of an exact name of what the boys developed, we will refer to it as the "bottle" throughout this decision.

ock investigated to see where the sound came from. She saw the three boys in the backyard looking at something on the ground. She approached them and they ran into the house. She then went up to A.H.'s house and spoke with his sister. Ms. Bullock testified that when her request to speak with the children's mother was not complied with, she called the police.[3]

Police and fire personnel were dispatched to the residence. At the scene, they found a melted two-liter bottle which Deputy David Whitesell of the Marion County Sheriff's Department referred to as the remnants of an "acid type bomb." Transcript at 29. He explained that when the ingredients are mixed and the cap is placed on the bottle, pressure will build up inside the bottle and it will burst. After the bottle bursts, the bottle will melt around the split which developed in it at the time of the explosion. He testified that no people or animals were hurt and that no property was destroyed other than the two-liter bottle.

Delinquency allegations were filed against E.L. and A.H. The State alleged that each committed the possession of a destructive device, an act which would be a Class C felony if committed by an adult. E.L. admitted to the allegations but apparently in exchange for his admission, he was alleged to have committed criminal recklessness. E.L. then testified for the State at A.H.'s delinquency hearing. As to A.H., the allegation was found to be true and the juvenile court awarded guardianship of A.H. to the Department of Correction, but suspended that disposition. Several other conditions, including attendance in the Fire Stop Program, a psychological evaluation, limited internet access, no contact with E.L., informal probation, and the requirement that he write a five page essay on the "Dangers of Explosive Devices" were placed upon A.H.

The first issue presented by A.H. is that the evidence was insufficient to support the juvenile court's finding that he possessed a destructive device. In reviewing the sufficiency of the evidence with respect to juvenile adjudications, we neither reweigh the evidence nor judge the credibility of the witnesses. *B.K.C. v. State*, 781 N.E.2d 1157, 1163 (Ind.Ct.App. 2003). We consider only the evidence most favorable to the judgment and the reasonable inferences to be drawn therefrom and will affirm if the evidence and those inferences constitute substantial evidence of probative value to support the judgment. *Id.*

Indiana Code § 35–47.5–5–2 states that "[a] person who knowingly or intentionally ... possesses ... a destructive device, unless authorized by law, commits a Class C felony." A destructive device is defined as:

"(1) an explosive, incendiary, or overpressure device that is configured as a:

(A) bomb;

(B) grenade;

(C) rocket with a propellant charge of more than four (4) ounces;

(D) missile having an explosive or incendiary charge of more than one-quarter (¼) ounce;

(E) mine;

(F) Molotov cocktail; or

(G) device that is substantially similar to an item described in clauses (A) through (F);

(2) a type of weapon that may be readily converted to expel a projectile by the action of an explosive or other propel-

---

**3.** It appears that no parent was at home when the incident occurred.

lant through a barrel that has a bore diameter of more than one-half (½) inch; or

(3) a combination of parts designed or intended for use in the conversion of a device into a destructive device." Ind. Code § 35–47.5–2–4 (Burns Code Ed. Supp.2002).

However, the term "destructive device" does not include a "device that is neither designed nor redesigned for use as a weapon." *Id.* A.H. asserts that the evidence did not establish that the bottle was a bomb or that it was designed as a weapon.

In order to address A.H.'s claims, we are faced with the task of examining the device which A.H. and his friends constructed in the context of certain categories to determine whether it is the type of device which the General Assembly meant to regulate. In Chapter 2 of Article 47.5, the General Assembly defined many of the relevant terms it used in drafting the laws to regulate explosives. An "overpressure device" is defined as:

"(1) a frangible container filled with an explosive gas or expanding gas that is designed or constructed to cause the container to break or fracture in a manner that is capable of causing death, bodily harm, or property damage; or (2) a container filled with an explosive gas or expanding gas or chemicals that generate an expanding gas." Ind.Code § 35–47.5–2–11 (Burns Code Ed. Supp. 2002).

Based upon subsection 2 of this definition, one can easily conclude that the bottle used by A.H. and his friends qualifies as an overpressure device because it was a container filled with chemicals that generate an expanding gas. A significant note

is that the knowing or intentional use of an overpressure device is a Class A misdemeanor.[4] Ind.Code § 35–47.5–5–9 (Burns Code Ed. Supp.2002). Consequently, we begin with the initial conclusion that the General Assembly has chosen to regulate, in some manner, the type of device used by A.H. Nonetheless, our concern turns to whether the General Assembly intended that the bottle used by A.H. should fall into the category of "destructive device" as alleged by the State and whether A.H.'s conduct would be classified as a Class C felony if he were an adult.

While A.H. has sought to challenge whether the bottle he used was a bomb, for the sake of argument, we will assume that it is. This is so because even if the bottle could be considered a bomb, it will not be a "destructive device" if it was not designed or redesigned as a weapon. "Weapon" is not defined in Article 47.5. In fact, neither this court nor either of the parties is aware of a definition of "weapon" in the Indiana Code. Turning to a source outside of our Code, we find that weapon is defined as "an instrument of offensive or defensive combat: something to fight with" or "a means of contending against another." Webster's Ninth New Collegiate Dictionary 1335 (1985). In essence, a weapon is something that is used against another person.[5]

In this case, the evidence is clear that the boys did not intend that the bottle be used against another person or an animal. While it is possible that the bottle could have *potentially* been used to combat or contend against another person or animal, an item may only be classified as a destructive device if it was designed or rede-

---

4. The use of an overpressure device is a Class D felony if the person has a prior unrelated conviction for using an overpressure device.

5. It is logical to conclude that an instrument used against an animal would also be a weapon.

signed for that purpose. Here, there is no evidence from which the juvenile court could have concluded that the bottle was designed to be used against a person or animal. Rather, the evidence established that the bottle was not a weapon because the boys took precautions to make sure that no one was hurt and that nothing was damaged other than the bottle itself. Because the device was not designed or redesigned for use as a weapon, it cannot be held to be a "destructive device" and consequently, the possession and use of the bottle could not properly result in a violation of I.C. § 35–47.5–5–2.[6]

■■■ As previously stated, the use of an overpressure device is prohibited by law and is a Class A misdemeanor. Here, there is no doubt that A.H. used an overpressure device, an act which would be a Class A misdemeanor if he were an adult. It would then appear that a true finding could have been made against A.H. for use of an overpressure device had he been charged with such. It is also possible that the use of an overpressure device could be an included offense of the possession of a destructive device in some cases. Generally, we may order a modification of a conviction to that of a lesser included offense because of the insufficiency of evidence on a particular element of a crime. *Nuerge v. State*, 677 N.E.2d 1043, 1047, (Ind.Ct.App. 1997), *trans. denied.*

■■■ To determine whether A.H. could be found to have used an overpressure device as an included offense, we turn to the analysis established by our Supreme Court in *Wright v. State*, 658 N.E.2d 563 (Ind.1995). To be an included offense, the offense must be either inherently or factually included in the crime charged. *Id.* at 566–67. To determine if an offense is inherently included, the court must compare the statute defining the crime charged with the statute defining the alleged included offense. *Id.* at 566. To determine if an offense is factually included in the crime charged, the court must compare the statute defining the alleged included offense with the charging instrument in the case. *Id.* at 567. If the charging instrument alleges that the means used to commit the crime charged include all of the elements of the alleged lesser included offense, then the alleged lesser included offense is factually included. *Id.*

■■■ The use of an overpressure device does not qualify as an inherently included offense of possession of a destructive device. Proof that one possessed[7] a destructive device does not establish that one used an overpressure device because a destructive device may consist of an explosive or incendiary device, in addition to an overpressure device. Additionally, the fact that one *possessed* a destructive device does not necessarily mean that one *used* an overpressure device.[8]

6. This is not to say that the self-serving testimony from a party that he did not intend to use a device as a weapon precludes the consideration that it was a weapon and could be a destructive device. In this case, the facts established that the boys were not using this bottle as a weapon. Had the facts shown that they attempted to injure someone with it, or were it of such a size or nature that someone was most likely to be hurt through its use, that action would be viewed differently.

7. Indiana Code § 35–47.5–5–2 also prohibits the acts of manufacturing, transporting, distributing, possessing with the intent to distribute, or offering to distribute a destructive device.

8. It is possible to argue that in some situations, the fact that an overpressure device is a component of a destructive device results in the conclusion that an overpressure device was used in the commission of the crime of possession of a destructive device.

In determining whether use of an overpressure device is a factually included offense in this case, we must review the language of the delinquency allegation. It states, "On or about the 4th day of September, 2002, said child, did knowingly or intentionally possess a destructive device that is: bottle containing toilet bowl cleaner and aluminum foil which can cause an explosion." Appendix at 11. While the delinquency allegation stated that A.H. merely possessed a destructive device, the language referring specifically to the bottle indicates that the action that was alleged was the use of the bottle. In this case, A.H. retrieved the two-liter bottle and the other necessary items, assembled the bottle by placing the aluminum foil and toilet bowl cleaner inside it, screwed on the cap rendering it capable of causing an explosion, and then placed it inside a hole in which it would explode. By combining the ingredients inside the bottle and placing the cap on it, A.H. necessarily used it. Those actions made the bottle capable of exploding and only the removal of the cap would have prevented the bottle from exploding. Because the delinquency allegation asserted that the bottle contained the aluminum foil and toilet bowl cleaner and was capable of causing an explosion, the allegation included that the means used to commit the charged act also included all of the elements of the included crime of use of an overpressure device. Therefore, A.H. may be found to have used an overpressure device.

Based upon the foregoing, we remand to the juvenile court to vacate the true finding of possession of a destructive device, which would be a Class C felony if committed by an adult, and to enter a true finding for use of an overpressure device, a Class A misdemeanor when committed by an adult. In doing so the juvenile court may vacate, alter, or revise its dispositional order.[9]

FRIEDLANDER and RILEY, JJ., concur.

---

9. Because we have reversed the finding of possession of a destructive device and consequently remand to the juvenile court for further proceedings, we do not address A.H.'s claim that the sentence he received was improper.