## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 20 2018, 5:39 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Jeffrey K. Johnson
Pendleton, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jeffrey K. Johnson,<br>*Appellant-Petitioner,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Respondent.* | July 20, 2018<br><br>Court of Appeals Case No.<br>84A01-1703-PC-491<br><br>Appeal from the Vigo Superior<br>Court<br><br>The Honorable Michael R. Rader,<br>Judge<br><br>Trial Court Cause No.<br>84D05-1208-PC-2606 |

**Mathias, Judge.**

[1] After his conviction for voluntary manslaughter was affirmed on direct appeal, Jeffrey K. Johnson ("Johnson") filed a petition for post-conviction relief in Vigo

Superior Court. The post-conviction court denied Johnson's petition, and Johnson appeals *pro se*, presenting two issues, which we restate as: (1) whether the post-conviction court applied the proper legal standard in rejecting Johnson's claim of ineffective assistance of trial counsel for tendering a jury instruction on the lesser-included offense of voluntary manslaughter, and (2) whether the post-conviction court erred by not addressing in its findings of fact and conclusions of law numerous issues which Johnson claims were before the court.

We affirm.

## Facts and Procedural History

In our memorandum decision on Johnson's direct appeal, we set forth the facts underlying his conviction as follows:

> During October 2001, Johnson was married to Keshia Johnson, but they were living separately pursuant to a court's no contact order. Johnson and Keshia had a history of arguing, including Johnson threatening to physically harm Keshia. A neighbor saw Johnson and Keshia arguing outside their apartment and heard Johnson threaten, "bitch, get back in this house . . . get back in this house or I'm gonna kill you." On July 5, 2001, Keshia's friend Kimberly Bryant walked into Keshia's apartment to see Keshia "on the floor and [Johnson] strangling her." On September 9, 2001, officers responded to a domestic dispute at Keshia's residence, observed Johnson standing across the street, and saw marks on Keshia's neck, "consistent with a type of a choking incident."
>
> On October 21, 2001, police were dispatched to Keshia's apartment because someone called 911, and then hung up.

Keshia appeared upset, and told the officers that Johnson pushed her and that she wanted him arrested. Johnson told the officers he was upset with Keshia for being "out all night" and for adultery. Johnson was arrested for violating his no contact order. While in jail, Johnson told inmate Eldridge Wade that he would kill his wife when he was released from jail. On October 22, 2001, Johnson appeared in court for an arraignment hearing. He was released later that day. The same day, a friend of Keshia's saw Johnson walk onto Keshia's front porch, look into her mailbox, then jump off the porch when he realized he was being watched.

During the early morning hours of October 23, 2001, Johnson was drinking at a bar with Lonnie VanHorn, a drug dealer who sold methamphetamine to Johnson. VanHorn and Johnson left the bar and parted ways around 2:55 a.m. At 3:51 a.m., a neighbor heard arguing in Keshia's apartment. Keshia's body was found in the apartment later that day. The autopsy found that she had been strangled and stabbed nine times.

VanHorn and his friend James Ware were socializing in the house in which VanHorn was staying when Johnson arrived later. Johnson was acting "spooked" and told VanHorn, "I did it . . . I killed Keshia." Ware heard Johnson ask VanHorn if he could wash some clothing, and Johnson showered at that house.

Around 5:00 a.m., Johnson went to his friend Jeff Foster's apartment. Rosetta Smith saw Johnson there. She saw blood on his shirt and observed that he was acting "shaky, kind of nervous looking" and was asking people to give him an alibi. Smith also said that he had "killed her," but Smith did not know whom Johnson meant. Johnson left cell phone messages with a friend, telling the friend to contact him because of an emergency. Johnson went to work from 7:12 a.m. until 1:20 p.m.

The police apprehended Johnson outside of Keshia's apartment around 1:30 p.m. Johnson was placed in a room at the police station until approximately 4:00 p.m., and he was videotaped

> while waiting and later while being interviewed. While in jail, Johnson again talked to inmate Wade and told him that he had just killed his wife by choking her and then stabbing her.

*Johnson v. State*, No. 84A01-0402-CR-64, slip op. at 2–4 (Ind. Ct. App. Dec. 6, 2004) (citations omitted), *trans. denied*.

[4] On October 29, 2001, the State charged Johnson with murder. A jury trial commenced on December 8, 2003. At the conclusion of the evidence, Johnson's trial counsel tendered an instruction on the lesser-included offense of voluntary manslaughter. During its deliberations, the jury sent the trial judge a note that said, "What occurs if the jury is 'hung'? After considerable deliberation four of us continue to assert the state did not prove [Johnson's] guilt." Direct Appeal App. p. 579. After consultation with both defense counsel and the prosecution, the trial court sent a note to the jury stating, "You need to continue to deliberate." *Id*. at 580. Shortly thereafter, the jury found Johnson guilty of the lesser-included offense of voluntary manslaughter. The trial court subsequently sentenced Johnson to forty-five years of incarceration.

[5] On direct appeal, Johnson presented five issues: (1) whether the prosecuting attorney committed misconduct by informing the jury that Johnson's counsel requested the jury instruction on the lesser-included offense of voluntary manslaughter; (2) whether the trial court erred in communicating with the jury in open court regarding the possibility of an impasse; (3) whether the trial court's admission of certain hearsay statements violated Johnson's confrontation rights under *Crawford v. Washington*, 541 U.S. 36 (2004); (4)

whether the trial court erred in excluding certain evidence proffered by Johnson; and (5) whether the trial court properly reported Johnson's good time credit in its sentencing order. *Johnson*, slip op. at 2.

[6] A panel of this court rejected Johnson's claims, holding: (1) that the prosecutor's comment was harmless; (2) that Johnson waived any objection to the trial court communicating with the jury and that the trial court was not required to communicate with the jury in open court in Johnson's presence because the jury was not deadlocked; (3) that the hearsay statements were not testimonial and therefore *Crawford* was inapplicable; (4) that the trial court did not abuse its discretion in excluding Johnson's proffered evidence; and (5) that the trial court's sentencing order was "understood to automatically award him 809 days of credit in addition to the 809 days that he served while awaiting sentencing[.]" *Id*. at 13. Johnson filed a petition to transfer his case to the Indiana Supreme Court, but that court denied the petition.

[7] On July 24, 2012, Johnson filed a *pro se* petition for post-conviction relief, which he amended on July 15, 2013. The post-conviction court summarily denied Johnson's petition, and Johnson appealed. The State filed a motion to remand, which this court granted on December 5, 2014. Appellant's Amended App. p. 127–28. The post-conviction court held evidentiary hearings on remand on January 5, March 23, and August 31, 2015. On December 4, 2015, in apparent response to the post-conviction court's request for post-hearing briefing on the issues, Johnson filed what he titled a "Motion for Remaining Issues to be a Part of the Record," a twenty-eight-page filing referencing several items of evidence.

*Id.* at 258–86. Attached to this motion was a collection of sixteen exhibits submitted by Johnson. *Id.* at 287–337. The post-conviction court granted the motion in an order issued December 23, 2015. Both parties then submitted proposed findings of fact and conclusions of law, and on February 9, 2017, the post-conviction court issued its findings of fact and conclusions of law denying Johnson's petition for post-conviction relief. Johnson now appeals.

## Post-Conviction Standard of Review

[8] Our standard of review of claims that a post-conviction court erred in denying relief is well settled. That is, post-conviction proceedings are not "super appeals" through which convicted persons can raise issues they failed to raise at trial or on direct appeal. *Manzano v. State*, 12 N.E.3d 321, 325 (Ind. Ct. App. 2014) (citations omitted), *trans. denied*. Instead, post-conviction proceedings afford petitioners a limited opportunity to raise issues that were unavailable or unknown at trial and on direct appeal. *Id.* A post-conviction petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. *Id.* Thus, on appeal from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Id.* To prevail on appeal from the denial of post-conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id.*

[9] As required by Indiana Post-Conviction Rule 1(6), the post-conviction court entered findings of fact and conclusions of law. Therefore, we must determine if

the court's findings are sufficient to support its judgment. *Manzano*, 12 N.E.3d at 325. We review the post-conviction court's factual findings under a clearly erroneous standard, i.e., we will not reweigh the evidence or judge the credibility of witnesses, and we will consider only the probative evidence and reasonable inferences flowing therefrom that support the post-conviction court's decision. We do not defer to the post-conviction court's legal conclusions, which are reviewed *de novo*. *Stevens v. State*, 770 N.E.2d 739, 746 (Ind. 2002).

## I. Whether the Post-Conviction Court Misstated the Law

[10]     Johnson first argues that, in addressing one of his allegations of ineffective assistance of trial counsel, the post-conviction court misstated the law regarding when a trial court should give the jury an instruction on a lesser-included offense.[1] Specifically, Johnson argues that the post-conviction court misstated the law when it wrote in its findings of fact and conclusions of law:

> First, the trial court must compare the statue [sic] [defining] the
> crime charged with the statute defining the lesser-included
> offense. If the lesser-included offense may be established by proof
> of all of the same or proof of less than all of the same material
> elements, or if the alleged lesser-included offense requires proof
> of a lesser culpability, then the alleged lesser-included offense is

---

[1] The State, perhaps out of an abundance of caution, treats Johnson's argument as one of the ineffective assistance of counsel. Our review of Johnson's brief, however, reveals that he makes no cognizable claim of ineffective assistance of counsel. We therefore do not address such an argument. *See Wingate v. State*, 900 N.E.2d 468, 475 (Ind. Ct. App. 2009) (noting that a party waives an issue where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record.); Ind. Appellate Rule 46(A)(8)(a) (requiring that contentions in appellant's briefs be supported by cogent reasoning and citations to authorities, statutes, and the appendix or parts of the record on appeal). We recognize that Johnson is proceeding *pro se*. But it is well settled that, in Indiana, *pro se* litigants are held to the same standards as licensed attorneys, and we may not become an advocate for *pro se* litigants or develop arguments on their behalf. *Lowrance v. State*, 64 N.E.3d 935, 938 (Ind. Ct. App. 2016), *trans. denied*.

inherently included. In the second step, if the trial court finds the lesser-included offense is not inherently included, then it must find all of the elements of the alleged lesser-included offense are covered by the allegations in the charging instrument. **If the trial court finds neither, then it must examine the evidence presented by each party and determine whether there is a serious evidentiary dispute over the elements that distinguish the crime charged and the lesser-included.** If it is possible for the jury to find the lesser and not the greater offense has been committed, the trial court must instruct the jury on both offenses.

Appellant's Amended App. p. 525 (citing *Wright v. State*, 658 N.E.2d 563, 567 (Ind. 1995)) (emphasis added). Johnson correctly notes that this misstates what the *Wright* court actually wrote, i.e.:

> If the alleged lesser included offense is **neither** inherently nor factually included in the crime charged, then the trial court should not give a requested instruction on the alleged lesser included offense.
>
> . . . [I]f a trial court has determined that an alleged lesser included offense is **either** inherently or factually included in the crime charged, it must look at the evidence presented in the case by both parties. If there is a serious evidentiary dispute about the element or elements distinguishing the greater from the lesser offense and if, in view of this dispute, a jury could conclude that the lesser offense was committed but not the greater, then it is reversible error for a trial court not to give an instruction, when requested, on the inherently or factually included lesser offense.

*Wright*, 658 N.E.2d at 567.

[11]    Here, it appears that the post-conviction court conflated these two paragraphs from *Wright*. In other words, the post-conviction court mistakenly wrote that, if

the trial court finds that a lesser offense is neither inherently nor factually included, then it must determine whether there is a serious evidentiary dispute as to which offense the defendant committed. Whereas the correct legal test for lesser included offenses is that, if a trial court finds that the lesser-included offense is **either** inherently or factually included, then it must proceed to determine whether there is a serious evidentiary dispute as to whether the defendant may have committed the lesser but not the greater offense. *Id.* And if the trial court finds that the lesser offense is **neither** inherently nor factually included, then it should not give the lesser-included offense instruction. *Id.* We conclude, however, the post-conviction court's misstatement constitutes, at most, harmless error.

[12] It is well established that voluntary manslaughter is, as a matter of law, an inherently lesser-included offense of murder. *See Watts v. State*, 885 N.E.2d 1228, 1232 (Ind. 2008). Thus, under the *Wright* test, the next step was to determine whether there was a serious evidentiary dispute as to whether the defendant committed the lesser or the greater offense. Despite the mistake in the post-conviction court's description of the *Wright* test, this is precisely what the post-conviction court did. That is, the post-conviction court addressed the question of whether there was a serious evidentiary dispute as to the existence of sudden heat—the element that distinguishes murder from voluntary

manslaughter.[2] And the post-conviction court concluded that there was a serious evidentiary dispute regarding the existence of sudden heat sufficient to support an instruction on the lesser-included offense of voluntary manslaughter. *See* Appellant's App. p. 525 ("The trial record clearly shows evidence of sudden heat.").

[13] Accordingly, even though the post-conviction court's findings and conclusions contains a misstatement of the *Wright* test, this had no effect on the post-conviction court's ultimate conclusion—that there was a serious evidentiary dispute as to whether Johnson acted in sudden heat—because the trial court properly applied the *Wright* test. There is therefore no need to remand for reconsideration as requested by Johnson.[3]

---

[2] *See* Ind. Code § 35-42-1-3(b) ("The existence of sudden heat is a mitigating factor that reduces what otherwise would be murder under section 1(1) of this chapter to voluntary manslaughter."); *Watts*, 885 N.E.2d at 1232.

[3] Although Johnson frames his argument as the post-conviction court misstating the applicable law, he also appears to argue that the trial court erred by instructing the jury on the lesser-included offense of voluntary manslaughter. He does not, however, frame this issue as one of the ineffective assistance of trial counsel. *See* note 1, *supra*. Instead, he appears to argue it as a free-standing claim of error. But Johnson cannot raise a free-standing issue that was known and available on direct appeal in a petition for post-conviction relief. *See Lindsey v. State*, 888 N.E.2d 319, 322 (Ind. Ct. App. 2008), *trans. denied*. Not even an allegation that the error is fundamental is sufficient to overcome this waiver, as our supreme court has held that even claims of fundamental error are not reviewable in post-conviction proceedings when presented as free-standing claims of error. *Sanders v. State*, 765 N.E.2d 591, 592 (Ind. 2002). There is nothing in the record that would suggest that the instructional issue Johnson now seeks to present was either unknown or unavailable to him on direct appeal.

We further note that, in addressing Johnson's claim of prosecutorial misconduct on direct appeal, this court held that "the State presented ample evidence to support the jury's finding that Johnson committed voluntary manslaughter." *Johnson*, slip op. at 7. To the extent that Johnson now seeks to relitigate this issue, our prior holding is *res judicata*. *See Lindsey*, 888 N.E.2d at 322 (noting that if an issue was raised on direct appeal, but decided adversely, it is *res judicata*) (citing *Timberlake v. State*, 753 N.E.2d 591, 597 (Ind. 2001)).

## II. Whether the Post-Conviction Court Failed to Address All of Johnson's Claims

[14] Johnson next contends that the post-conviction court failed to address all fifty-three of his claims for post-conviction relief and instead only addressed six of these claims. He therefore argues that we should remand with instructions that the post-conviction court address all of his claims or address them ourselves.

[15] In his initial petition for post-conviction relief, Johnson presented the following claims:

> (a) Trial counsel were ineffective when they failed to investigate the crime scene and evidence, when they failed to fully and properly prepare for trial, when they failed to object to Constitutional violations and when they failed to advocate the interest of his client and the actual innocence claim of his client.
>
> (b) Appellate counsel was ineffective when he failed to raise meritorious issues and competently raise issues.

Appellant's Amended App. p. 17.

[16] In his amended petition, Johnson presented seventeen allegations of the ineffectiveness of his trial counsel,[4] five allegations of the ineffectiveness of his

---

[4] Specifically, Johnson alleged that his trial counsel were ineffective for: (1) tendering a jury instruction unsupported by law; (2) failing to strike a juror; (3) failing to investigate the crime scene; (4) failing to investigate evidence available through discovery; (5) failing to call certain witnesses; (6) failing to call expert witnesses; (7) failing to subpoena a hard-to-find witness until shortly before trial; (8) failing to present evidence; (9) failing to test certain evidence for DNA; (10) failing to impeach witnesses; (11) failing to introduce evidence of mitigation at sentencing; (12) failing to file or properly file a motion in limine; (13) failing to file a motion for a continuance; (14) failing to object to allegedly inadmissible evidence; (15) failing to request a mistrial or an admonishment after the prosecutor's misconduct; (16) failing to request a mistrial

appellate counsel,[5] and argued that the trial court committed fundamental error by giving a jury instruction that was improper and unsupported by the evidence. *Id*. at 74–76.

[17] At the final evidentiary hearing, the post-conviction court asked Johnson to submit a brief explaining his claims in more detail. Johnson's post-hearing Motion for Remaining Issues to be a Part of the Record was apparently in response to this request. Johnson now argues that the post-conviction court erred by not specifically addressing each claim Johnson raised in this post-hearing motion and in his petition for post-conviction relief.

[18] We conclude that Johnson has waived this issue, as he does not specify which claims the trial court failed to address. He simply contends that the trial court failed to address all thirty-one of the claims he believes he raised in his amended petition and post-hearing motion without identifying what those issues are. We will not scour the record to develop Johnson's arguments for him. *See Lowrance v. State*, 64 N.E.3d 935, 938 (Ind. Ct. App. 2016) (noting that this court may not become an advocate for *pro se* litigants or develop arguments on their behalf), *trans. denied*; *see also Keller v. State*, 549 N.E.2d 372, 373 (Ind. 1990) (noting that "a court which must search the record and make up its own arguments because

---

for the State's failure to disclose certain evidence during discovery; and (17) failing to raise a claim of a speedy trial violation. Appellant's Amended App. pp. 74–75.

[5] Specifically, Johnson alleged that his appellate counsel was ineffective for: (1) failing to raise issues that were clear from the face of the record; (2) failing to raise issues that were brought to his attention by Johnson; (3) incompetently arguing an issue after an incorrect analysis of the law was allegedly stated by this court on direct appeal; (4) failing to present the issue of a speedy trial violation; and (5) failing to raise and support a claim of ineffective assistance of trial counsel. *Id*. at 75.

a party has presented them in perfunctory form runs the risk of being an advocate rather than an adjudicator.").

[19] Moreover, to the extent that Johnson's argument is that the post-conviction court had a duty to consider each claim raised in his post-hearing motion, we agree with the State that Johnson was required to have presented these issues in either his original or amended petitions for post-conviction relief. *See Walker v. State*, 843 N.E.2d 50, 57 (Ind. Ct. App. 2006) (noting that issues not presented in a post-conviction petition are waived), *trans. denied*; *see also* Ind. Post-Conviction Rule 1(8) ("All grounds for relief available to a petitioner under this rule must be raised in his original petition."). Nor do we consider Johnson's post-hearing motion a request to amend his petition. It was instead akin to an argumentative brief, as it was a response to the post-conviction court's request for such post-hearing briefing.

## Conclusion

[20] The post-conviction court did not commit reversible error by misstating the law regarding the propriety of instructing the jury on the lesser-included offense of voluntary manslaughter because the court ultimately addressed Johnson's claim under the proper legal standard. Nor did the post-conviction court err by failing to specifically address all fifty-three claims Johnson argues he presented because Johnson does not identify which issues he claims the court should have addressed. Accordingly, we affirm the post-conviction court's denial of Johnson's petition for post-conviction relief.

Affirmed.

Riley, J., and May, J., concur.