## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 14 2020, 8:53 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy J. O'Connor
O'Connor & Auersch
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Benjamin J. Shoptaw
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Alvin Perkins, <br> *Appellant-Defendant*, <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff*. | July 14, 2020 <br><br> Court of Appeals Case No. 19A-CR-2302 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Shatrese Flowers, Judge <br><br> Trial Court Cause No. 49G02-1805-MR-17276 |

**Brown, Judge.**

[1] Alvin Perkins appeals his conviction for murder. He raises one issue which we restate as whether the trial court abused its discretion by declining to give Perkins's proposed instruction on reckless homicide as a lesser included offense of murder. We affirm.

*Facts and Procedural History*

[2] Perkins and his wife, Mona, had been married since the early 1980s. On the morning of May 26, 2018, they argued at their apartment. At some point during the argument, Mona picked up a lamp, unplugged it, and chased Perkins in their bedroom while carrying the lamp. According to Perkins's statement to law enforcement, she chased him around, he "chased her back around," and she "backed up." State's Exhibit No. 70 at 14. He retrieved a handgun case from behind a cabinet beside the bed and removed a holstered handgun.

[3] Perkins shot Mona six times, firing the first shot when she was on the other side of the bed from him. Mona sustained two gunshot wounds on the left side of her back, as well as gunshot wounds on her left shoulder, chest, pelvis, and left leg, and she later died from her injuries.

[4] Perkins returned the handgun to the case, called 911, and encountered and led the responding law enforcement to the apartment. Officers asked him what had happened, and he "stated that he had shot his wife," "they had been arguing all night," and "she had been nagging at him and he shot her." Transcript Volume II at 94. Officers arrested Perkins, and he gave a statement in which he indicated he was trying to shoot the lamp.

[5] At Perkins's jury trial for murder, the State submitted as exhibits the 911 call and statement Perkins gave to police; a computer diagram of the apartment scene detailing where evidence was recovered; and corresponding photographs of the bedroom, including of a lamp on the bed, the bedroom's west wall and a cabinet to the left of the bed. The State presented the testimony of an officer who responded to the scene and indicated Mona was discovered on the "left hand side" of the bed "propped up between the wall and nightstand that was next to the bed" and that there was a significant amount of blood on her, her clothes, and the floor. *Id.* at 97. The officer further testified that Perkins did not ever ask about Mona or her condition, that she did not notice any blood, marks, or injuries on him, and that he never complained of any injuries. A forensic pathologist testified about the trajectory of the bullets in relation to Mona's gunshot wounds and explained that the shots to her back had a trajectory of "left to right upward, upward and left to front." *Id.* at 190. Perkins tendered a jury instruction on a lesser included offense of reckless homicide. The trial court denied the instruction, stated it did not believe the evidence supported a reckless homicide instruction, and provided an instruction on voluntary manslaughter over the State's objection. The jury found Perkins guilty of murder.

### *Discussion*

[6] The issue is whether the trial court abused its discretion by declining to give Perkins's proposed instruction on reckless homicide to the jury. We apply a three-step analysis in determining whether a defendant was entitled to an

instruction on a lesser-included offense. *See Wright v. State*, 658 N.E.2d 563, 566-567 (Ind. 1995). We must determine: (1) whether the lesser-included offense is inherently included in the crime charged; if not, (2) whether the lesser-included offense is factually included in the crime charged; and, if either, (3) whether there is a serious evidentiary dispute whereby the jury could conclude the lesser offense was committed but not the greater offense. *Id.* If the "jury could conclude that the lesser offense was committed but not the greater, then it is reversible error for a trial court not to give an instruction, when requested, on the inherently or factually included lesser offense." *Id.* at 567. When the trial court makes a finding that a serious evidentiary dispute does not exist, we will review that finding for an abuse of discretion. *Brown v. State*, 703 N.E.2d 1010, 1019 (Ind. 1998).

[7] Reckless homicide[1] is an inherently included lesser offense of murder,[2] as the only element distinguishing the two is the requisite culpability. *See Miller v. State*, 720 N.E.2d 696, 702 (Ind. 1999). A person engages in conduct "recklessly" if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct. Ind. Code § 35-41-2-2(c) By contrast, a person engages in conduct "knowingly" if, when he engages in the

---

[1] Ind. Code § 35-42-1-5.

[2] Ind. Code § 35-42-1-1 provides that a person who knowingly or intentionally kills another human being commits murder.

conduct, he is "aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b).

[8] Perkins disputes only his *mens rea* and argues evidence of his actions after the shooting demonstrates he did not intend to cause Mona's death. He contends that, in both the 911 call and his statement, he reported she had brandished a lamp and threatened to strike him with it and he had shot at the lamp to cause her to drop it.

[9] While Perkins's account to police following the incident includes statements that he was "not thinking" that he was going to hit her as he was shooting at the lamp, it also includes his indications he and Mona "weren't really like super fighting but she just chased [him] around with the lamp," she "didn't swing it at" him, and that "she brought [the lamp] down" and he was "still trying to shoot at" it. State's Exhibit No. 70 at 5, 10. After he retrieved the handgun case from behind a cabinet beside the bed and removed a holstered handgun, Perkins fired six shots in Mona's direction at close range, and all six shots hit her. In light of Mona's gunshot injuries, including two on the left side of her back, and the record, we cannot say there was a serious evidentiary dispute that Perkins knowingly shot her, and we conclude the trial court did not abuse its discretion in declining to give the proposed instruction on reckless homicide. *See Miller v. State*, 720 N.E.2d 696, 703 (Ind. 1999) (no error in rejecting proposed jury instruction on reckless homicide as lesser included offense of murder; Miller shot at the victim, who was seated in a car, multiple times, demonstrating evidence of a knowing killing rather than a reckless killing);

*Sanders v. State*, 704 N.E.2d 119, 122-123 (Ind. 1999) (holding that there was no serious evidentiary dispute that the defendant knowingly shot the victim because there was no evidence he was randomly shooting and he "must have known that firing directly at a person at such close range is highly probable to result in death"); *cf. Young v. State*, 699 N.E.2d 252, 256 (Ind. 1998) (serious evidentiary dispute regarding whether Young committed murder or reckless homicide when evidence suggested Young shot into a crowd of people and did not specifically aim at the victim).

[10] We affirm Perkins's conviction for murder.

[11] Affirmed

Najam, J., and Kirsch, J., concur.