Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Aug 21 2013, 5:35 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**PATRICK A. DUFF**
Duff Law, LLC
Evansville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LUKE SMITH, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 82A04-1212-CR-650 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE VANDERBURGH CIRCUIT COURT
The Honorable Kelli E. Fink, Magistrate
Cause No. 82C01-1101-FC-59

**August 21, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

On December 23, 2008, Michael Hall of the United States Postal Service ("USPS") attempted to deliver a package to a home in Evansville. During the course of this attempted delivery, Appellant-Defendant Luke Smith threatened to shoot Hall and took the package, which he knew did not belong to him. Hall subsequently identified Smith as the individual who threatened and took the package from him. Smith was charged with and convicted of Class C felony robbery. Smith was sentenced to an executed seven-year term of imprisonment. On appeal, Smith contends that the evidence is insufficient to sustain his conviction, that the trial court abused its discretion in instructing the jury, and the trial court erred by failing to award him credit for all of the time that he was incarcerated prior to trial. Concluding that the evidence is sufficient to sustain Smith's conviction, that the trial court acted within its discretion in instructing the jury, and that the trial court did not err in denying Smith credit time because Smith was incarcerated in connection to an unrelated Kentucky criminal conviction and was earning credit time in Kentucky during the period in question, we affirm.

## FACTS AND PROCEDURAL HISTORY

On December 23, 2008, Hall, a delivery supervisor with the USPS in Evansville, delivered an express mail package to a home located at 1406 South Grand Avenue. The package was addressed to "Sam Cook." Tr. p. 32. As Hall approached the home, he noticed "a head pop up in between the columns and look over the hedges." Tr. p. 21. When Hall reached the porch, a man, who was subsequently identified to be Smith, stood up, walked over to Hall, and asked for the package.

2

Smith claimed to be Sam Cook but could not provide any form of identification proving his identity. Smith claimed that his wallet was inside the home, he had locked himself out, and he was waiting for his brother to come unlock the door. Hall told Smith that he would leave a delivery form because he "didn't have time to wait," and Smith could pick up the package at the post office downtown. Tr. p. 21. Hall placed the delivery form in the mailbox and turned to leave the home.

Smith continued to try to convince Hall to leave the package as Hall walked away from the home. When Hall would not acquiesce to Smith's request that Hall give him the package, Smith followed Hall, "grabbed" the package, and started to run. Tr. p. 28. Hall knocked the package out of Smith's hand, "grabbed [Smith] by the back of his coat," and "slung" Smith to the ground. Tr. p. 28. Smith stood up and picked up the package. Hall again knocked the package out of Smith's hand, "grabbed" Smith by the jacket, and "slung" Smith to the ground. Tr. p. 28. After Smith again stood up, he walked toward the package and told Hall, "I ought to shoot your mother f****** ass." Tr. p. 29. Upon hearing Smith's threat, Hall "threw [his] hands up in the air, and … said, okay it's your package, you want it that bad, take it." Tr. p. 29. Smith then picked up the package and ran away.

Hall reported the incident to his manager and the Evansville Police Department. Hall's manager also reported the incident to inspectors for the USPS. Postal Inspector Steven Lamp arrived at the scene "within 3 to 4 minutes after the call." Tr. p. 31. Postal Inspector Lamp surveyed the scene and found "what was left of" the package. Tr. p. 31. When Postal Inspector Lamp found the package, it had been torn open and the contents

3

removed.

That same day, Evansville Police Detective Clinton Coomer showed Hall a photographic array which did not include Smith. Hall did not identify anyone in the photographic array. Detective Coomer showed Hall a second photographic array on December 30, 2008, which also did not include Smith. Again, Hall did not identify anyone in the photographic array. Detective Coomer later spoke with Phillip Parm, who witnessed Smith running from the scene. After viewing approximately 2000 photographs, Parm identified Smith as the person he had seen running. On January 8, 2009, Postal Inspector Lamp showed Hall a third photographic array, this one including a picture of Smith. Hall identified Smith as the individual who had threatened him and taken the package. In identifying Smith, Hall explained that, at first glance, he was "99% certain" that Smith was the individual who had threatened and robbed him, but after studying Smith's eyes in the picture he "became 100% certain." Tr. pp. 53, 54.

Postal Inspector Lamp subsequently interviewed Smith. Smith signed a *Miranda*[1] advisement form before agreeing to talk to Postal Inspector Lamp. Smith wrote a sworn statement, which reads as follows:

> On 12/23/08 I stole a piece of mail from a letter carrier at 1406 S. Grand Evansville, In. I was asked to get the [b]ox [b]y Ray Broidin. When the carrier did not give me the [b]ox I took it from him. We wrestled for a minute [b]efore I stole the mail [b]ox from the letter carrier. I threatened to shoot the carrier while we were wrestling [b]ut I did not have a gun. When the letter carrier did not give me the [b]ox I told him that "give me the motherf[******] package or I'll shot your ass." I did not harm the carrier to my knowledge. I did not think it would get that deep. All I was supposed to do was get the

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

[b]ox for Ray. I gave the [b]ox to Ray and Sugg Hughes. I met Sugg in the alley [b]ehind [G]rand [A]ve and gave him the [b]ox. I left the area [b]y walking west on Taylor. Sugg Ray and I went to the area in Ray's pick up. Ray dropped Sugg and me off to wait for the carrier to show up at 1406 S. Grand. I went to hang out on the porch of 1406 S. Grand and Sugg walked a few houses down and disappeared. After I got the [b]ox I gave it to Sugg …in the alley [b]ehind 1406 S. Grand Evansville, In. Sugg then told me to cut out. I thought the [b]ox I took had weed in it. Later that day Ray gave me one oz of weed for stealing the [b]ox from the letter carrier.

State's Ex. 23. Smith signed and initialed his sworn statement. Smith initialed a picture of 1406 South Grand Avenue and identified it as the location of the incident. Smith also initialed a copy of the delivery slip and identified it as belonging to the package in question.

On January 14, 2011, the State charged Smith with one count of Class C felony robbery and one count of Class D felony theft. On April 19, 2012, the State filed an information alleging that Smith was a habitual offender. At some point, Smith was transferred from a Kentucky State Reformatory to an Indiana jail while awaiting trial for the instant offense. On September 24, 2012, the State dismissed the Class D felony theft charge. The trial court conducted a two-day jury trial on September 24-25, 2012. Following the conclusion of the presentation of the evidence, Smith requested that the trial judge instruct the jury with regard to the lesser included offense of Class D felony theft, arguing that he believed that there was evidence by which "a jury could find that the defendant did take the package but did not do so by force." Tr. p. 230. The trial court denied Smith's request to include a theft instruction, finding that based on the evidence presented during trial, "there is not [a] serious evidentiary dispute as to whether or not force was used during this incident of the alleged robbery." Tr. p. 235.

Following deliberations, the jury found Smith guilty of Class C felony robbery. The State subsequently dismissed the allegation that Smith was a habitual offender. The trial court conducted a sentencing hearing on November 30, 2012, during which Smith requested credit time for all days that he was incarcerated prior to trial. In considering Smith's request, the trial court reviewed a letter submitted by Marc Abelove, Offender Information Specialist of the Kentucky Department of Corrections, in which Abelove stated that Smith was earning credit time on a Kentucky sentence for an unrelated criminal conviction during a portion of the time that he was incarcerated prior to trial. A Kentucky Department of Corrections Resident Record Card also showed that Smith was earning credit time in Kentucky during a portion of the time that he was incarcerated while awaiting trial for the instant offense. The trial court sentenced Smith to an executed term of seven years and gave Smith credit for 241 days of pre-trial incarceration. This credit award did not include the dates which Smith was incarcerated and earning credit time in Kentucky with respect to his unrelated Kentucky criminal conviction. This appeal follows.

## DISCUSSION AND DECISION

Smith raises three issues on appeal. Smith contends that the evidence is insufficient to sustain his Class C felony robbery conviction, that the trial court abused its discretion in instructing the jury, and that the trial court erred by failing to award him credit for all of time that he was incarcerated prior to trial.

### I. Sufficiency of the Evidence

Smith contends that the evidence is insufficient to sustain his conviction for Class C

felony robbery.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (citations, emphasis, and quotations omitted). "In essence, we assess only whether the verdict *could* be reached based on reasonable inferences that may be drawn from the evidence presented." *Baker v. State*, 968 N.E.2d 227, 229 (Ind. 2012). Upon review, appellate courts do not reweigh the evidence or assess the credibility of the witnesses. *Stewart v. State*, 768 N.E.2d 433, 435 (Ind. 2002). Inconsistencies in witness testimony go to the weight and credibility of the testimony, "the resolution of which is within the province of the trier of fact." *Jordan v. State*, 656 N.E.2d 816, 818 (Ind. 1995).

Indiana Code section 35-42-5-1 provides that a "person who knowingly or intentionally takes property from another person or from the presence of another person: (1) by using or threatening the use of force on any person; or (2) by putting any person in fear;

7

commits robbery, a Class C felony."[2]  In challenging the sufficiency of the evidence to sustain his Class C felony robbery conviction, Smith acknowledges that Hall identified him as the person who threatened and took the package from Hall and that Parm identified him as the individual he saw running away from the scene of the incident.  Smith also acknowledged that, after Postal Inspector Lamp read him a *Miranda* advisement and he signed a waiver of his rights, he gave a written sworn statement to Postal Inspector Lamp in which he admitted to threatening to shoot Hall and taking the package from Hall.

Smith argues, however, that Hall's identification of him should be discredited because Hall's testimony contained slight inconsistencies regarding the direction which Smith fled after the incident and also because Hall was not 100% certain in his initial identification of Smith and that also that Parm's identification of him should be discredited because Parm identified him after Postal Inspector Lamp had announced that there was a monetary reward for information relating to the incident.  In addition, Smith argues that his admission to Postal Inspector Lamp should be discounted because he initially claimed that he did not have any involvement in the incident.  Smith also argues that the evidence is insufficient to sustain his conviction because neither his fingerprints nor DNA were found on the package.  Finally, Smith argues that the evidence is insufficient to sustain his conviction because the State failed to present any evidence that Smith threatened Hall.

Upon review, we conclude that the evidence most favorable to the jury's verdict

---

[2] "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so."  Ind. Code § 35-41-2-2(b).  "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so."  Ind. Code § 35-41-2-2(a).

8

demonstrates that Smith knowingly or intentionally took property from Hall by threatening the use of force. Hall's identification of Smith was unequivocal. While Hall initially stated that he was only "99% certain" that Smith was the individual who had threatened and robbed him, after studying Smith's eyes in the picture he "became 100% certain." Tr. pp. 53, 54. Likewise, after looking at approximately 2000 pictures, Parm identified Smith as the individual who he saw running away from the scene of the incident, and, despite Smith's claim that Parm may have aided law enforcement merely for financial gain, Postal Inspector Lamp testified that Parm was not paid any of the reward money offered in connection to the instant matter.

Hall's testimony also indicated that Hall only allowed Smith to leave with the package after Smith threatened to shoot him. Any alleged minor inconsistency in Hall's testimony regarding the direction that Smith fled was likely discounted by the jury in light of Hall's unequivocal identification of Smith and his testimony regarding the threat levied by Smith. For his part, Smith admitted that he took the package from Hall after threatening to shoot Hall.[3] Furthermore, we cannot say that the evidence is insufficient to sustain Smith's conviction merely because neither Smith's DNA nor fingerprints were found on the package in light of Hall's and Parm's identification of Smith, Hall's testimony regarding the threat issued by Smith, and Smith's admission that he took the package from Hall after issuing a

_____

[3] To the extent that Smith argues on appeal that his sworn statement in which he admitted to committing the criminal act in question was involuntary, Smith waived this claim by not challenging the admission of the statement at trial and has also failed to make a cogent argument in this regard on appeal. *See Whatley v. State*, 908 N.E.2d 276, 280 (Ind. Ct. App. 2009), *trans. denied*; Ind. Appellate Rule 46(A)(8)(a).

threat to Hall. Smith's claims on appeal regarding the sufficiency of the evidence effectively amounts to an invitation to reweigh the evidence, which we will not do. *Stewart*, 768 N.E.2d 433 at 435.

## II. Jury Instructions

Smith next contends that the trial court abused its discretion in instructing the jury. During trial, Smith requested that the trial court instruct the jury on the lesser included crime of Class D felony theft. In making this request, Smith indicated that he believed that there was evidence by which the jury could find that he did take the package but did not do so by force. We disagree.

"The purpose of an instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." *Hoover v. State*, 918 N.E.2d 724, 731 (Ind. Ct. App. 2009) (citing *Overstreet v. State*, 783 N.E.2d 1140, 1163 (Ind. 2003)). Instruction of the jury is generally within the discretion of the trial court and is reviewed only for an abuse of that discretion. *Lee v. State*, 964 N.E.2d 859, 862 (Ind. Ct. App. 2012), *trans. denied*. When a party requests that a trial court instruct the jury on a lesser included offense of a charged crime, the court must determine whether the alleged lesser included offense is inherently included in the charged offense. *Wright v. State*, 658 N.E.2d 563, 566-67 (Ind. 1995). If a trial court determines that an alleged lesser included offense is inherently included in the charged offense, the court must look at the evidence presented by both parties to determine whether there is a serious evidentiary dispute about the element or elements distinguishing

10

the greater offense from the lesser offense, and if, in light of any potential dispute, the jury could conclude that the lesser offense was committed but not the greater. *Id*. at 567. If the evidence would support such a conclusion, it is reversible error for a trial court to not give an instruction on the lesser included offense when such an instruction is requested. *Id*. However, if the evidence would not support such a conclusion, then a trial court should not give the requested instruction. *Id*.

"Theft is an inherently lesser included offense of robbery." *Johnson v. State*, 749 N.E.2d 1103, 1109 (Ind. 2001). Robbery is the knowing or intentional taking of property from another person by threatening the use of force or putting the person in fear. Ind. Code § 35-42-5-1. Theft is the knowing or intentional exertion of unauthorized control over the property of another person with the intent to deprive the other person of the property's value. Ind. Code § 35-43-4-2(a). Thus, in the instant matter, the trial court was required to look at the evidence presented by the parties to determine whether there was a serious evidentiary dispute about the distinguishing elements of theft from robbery, *i.e.*, whether Smith took the package from Hall by threatening the use of force or putting Hall in fear. *See Wright*, 658 N.E.2d at 657.

In reviewing the evidence presented by the parties, the trial court found that there was no serious dispute as to whether Smith threatened Hall with the use of force during the commission of the robbery. Hall testified that when Smith attempted to take the package for the third time, Smith walked toward the package and told Hall, "I ought to shoot your mother f****** ass." Tr. p. 29. Upon hearing Smith's threat, Hall "threw [his] hands up in the air,

11

and … said, okay it's your package, you want it that bad, take it." Tr. p. 29. Smith then picked up the package and ran away. Likewise, Smith indicated in his sworn statement that he threatened to shoot Hall, telling Hall to "give me the motherf[******] package or I'll shot your ass." State's Ex. 23. In light of Hall's testimony and Smith's sworn statement regarding Smith's threat to shoot Hall, we, like the trial court, conclude that there was no dispute by which the jury could conclude that the lesser offense of theft was committed but not the greater offense of robbery. As such, we further conclude that the trial court did not abuse its discretion in denying Smith's request for the court to instruct the jury on the lesser included offense of theft. *See Wright*, 658 N.E.2d at 567.

### III. Credit Time

Smith also contends that the trial court erred in failing to award him credit time for some of the time that he was incarcerated prior to trial. Specifically, Smith argues that he is entitled to credit for the time that he was imprisoned prior to trial, even though he was serving a sentence for a criminal conviction in Kentucky and earning credit time in Kentucky during that time.

A person imprisoned for a crime or confined awaiting trial has a statutory right to credit time and is assigned to Class I. *Hall v. State*, 944 N.E.2d 538, 542 (Ind. Ct. App. 2011), *trans. denied*. Based upon that classification, a person earns one day of credit time for each day he is confined. *Id*. However, it has been observed, on several occasions that we should avoid construing the credit time statutes as permitting a defendant to claim "double or extra credit" for pre-sentencing confinement. *Payne v. State*, 838 N.E.2d 503, 510 (Ind. Ct.

12

App. 2005) (citing *Corn v. State*, 659 N.E.2d 554, 558 (Ind. 1995)).

The record demonstrates that the State charged Smith and the trial court issued a bench warrant for his arrest on January 14, 2011. However, the bench warrant was not served until April 4, 2012. Prior to April 3, 2012, Smith was incarcerated and earning credit for an unrelated Kentucky criminal conviction. Smith earned 395 credit days in connection with his Kentucky conviction from May 31, 2011 to August 31, 2012. At sentencing, the trial court awarded Smith 241 days of credit for pre-trial confinement from April 3, 2012 to November 29, 2012.

Smith argues that he should receive credit in Indiana for the time he was incarcerated prior to trial between February 8, 2011 and April 2, 2012. The record demonstrates, however, that Smith was receiving credit time in Kentucky during this period. Again, the Indiana Supreme Court has observed that we should avoid construing the credit time statutes as permitting a defendant to claim "double or extra credit" for pre-sentencing confinement. *Id*. (citing *Corn*, 659 N.E.2d at 558). As such, we conclude that the trial court properly determined that Smith was not entitled to double credit for the period he was incarcerated and earning credit in Kentucky.[4] *See id*.

---

[4] Moreover, we note that it would seem that Smith is not entitled to credit time for any period prior to the date on which warrant for his arrest in connection with the instant crime was served. The warrant for Smith's arrest was not served until April 4, 2012. Although Smith was incarcerated prior to April 4, 2012, this incarceration was the result of an unrelated criminal conviction in Kentucky, and the pre-April 4, 2012 restriction of Smith's liberty related to the Kentucky conviction, not the instant charges. *See generally Landrum v. State*, 428 N.E.2d 1228, 1230 (Ind. 1981) (providing that when a defendant is incarcerated on unrelated charges, an arrest does not occur until the court in which the new charges are filed orders his return to that court); *see also Davis v. State*, 819 N.E.2d 91, 96 (Ind. 2004) (providing that because the appellant was already incarcerated on unrelated charges, the reading of an arrest warrant for the charges at issue could not have constituted a restriction upon his liberty and freedom of movement with regard to the charges at issue),

In sum, we conclude that the evidence is sufficient to sustain Smith's Class C felony robbery conviction, the trial court acted within its discretion in instructing the jury, and the trial court properly denied Smith's request for pre-trial credit time for the period of time in which he was incarcerated for an unrelated Kentucky criminal conviction and was earning credit time in Kentucky.

The judgment of the trial court is affirmed.

BAILEY, J., and MAY, J., concur.

---

*trans. denied*; *State v. Helton*, 625 N.E.2d 1277, 1278 (Ind. Ct. App. 1993) (providing that where the appellant was being held in another county in relation to unrelated charges, arrest on charges at issue did not occur until he was ordered to be returned to the trial court for an initial hearing).