


**FILED**

Feb 21 2025, 8:55 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# Court of Appeals of Indiana

Clinton David Collins,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

February 21, 2025

Court of Appeals Case No.
24A-CR-1233

Appeal from the Jefferson Circuit Court

The Honorable Donald J. Mote, Judge

Trial Court Cause No.
39C01-2311-F2-1535

---

**Opinion by Judge Foley**
Judges Bailey and Bradford concur.

**Foley, Judge.**

[1] Following a jury trial, Clinton David Collins ("Collins") was convicted of Level 2 felony burglary,[1] Level 5 felony robbery,[2] and Class A misdemeanor theft,[3] for which he received an aggregate term of thirty-three years in the Indiana Department of Correction ("the DOC"). Collins appeals, claiming the trial court erred in declining to give his proposed jury instruction on residential entry, which is a lesser-included offense of burglary. Because we conclude that the trial court's decision was based on its misapprehension of the law and substantial evidence supported giving the instruction, we reverse the burglary conviction and remand for retrial on that count alone. Although we otherwise affirm, on remand, we instruct the trial court to reconsider any double jeopardy concerns based on the ultimate resolution of the burglary count. We also instruct the court to resolve record inconsistency as to the sentence for theft.

## Facts and Procedural History

[2] In November 2023, the State charged Collins with burglary as a Level 2 felony, robbery as a Level 3 felony,[4] and theft as a Level 6 felony.[5] In charging Collins, the State sought elevated convictions for burglary and robbery on the basis that

---

[1] Ind. Code § 35-43-2-1.

[2] I.C. § 35-42-5-1(a).

[3] I.C. § 35-43-4-2(a).

[4] I.C. 35-42-5-1.

[5] I.C. § 35-43-4-2(a)(1).

Collins committed the offenses while armed with a deadly weapon. The State also sought an elevated conviction for theft based on the value of the property. The matter progressed to a two-day jury trial, which was held in April 2024.

[3] At trial, there was evidence that on September 22, 2023, Bobby Kinman ("Kinman") was living alone in his apartment in Madison, Indiana. At the time, Kinman was under hospice care, suffering from end-stage pulmonary disease that required oxygen support. That evening, Andy Fitzgerald ("Fitzgerald")—an acquaintance of Kinman's—arrived at Kinman's apartment along with Collins, April Menning ("Menning"), and a person known as "Preacher Man." Some of the guests were consuming alcohol at the apartment. Kinman "did not see [Collins] . . . drinking," but thought Collins appeared intoxicated. Tr. Vol. 3 p. 24. At one point, Kinman saw that Collins had a bottle in his back pocket; he thought it "looked like vodka" or "alcohol of some type[.]" *Id.* at 46, 47. Collins was also carrying a knife, as was his custom.

[4] Inside the apartment, Collins and Fitzgerald argued about money. Tension also arose between Collins and Menning, who suspected that Collins wanted more than just a friendship with her. Fitzgerald told Collins to "get down the road," and Kinman tried to get everyone to leave by suggesting that "the neighbors probably called the police." *Id.* at 24. Menning exited the apartment on her own, with Collins following. Once outside, Collins—who appeared intoxicated and seemed "upset, aggravated, aggressive"—threw his phone and left it on the ground. *Id.* at 135. Menning left on foot while Collins walked away in a

different direction. Around the same time, Fitzgerald and Preacher Man left the area.

[5] About twenty minutes later, Collins returned to Kinman's apartment, "busting through" Kinman's door while repeatedly demanding: "Where's she at? Where's she at? I know she's here, she's here. Where's she at?" *Id.* at 26. Kinman replied that no one else was there. Collins then approached Kinman and said: "I know she's here, I know she's here, tell me where she's at[.]" *Id.* Collins "stood up to [Kinman]" and stared at him. *Id.* Collins then grabbed a chain from Kinman's neck, pushed him to the ground, and "hit [him] in the chest." *Id.* at 27. Kinman got back up, at which point Collins brandished a knife. Collins demanded $50, and Kinman offered $10. Collins "sudden[ly] . . . turned" and demanded to "use [Kinman's] phone. *Id.* Kinman handed his phone to Collins, who tried to call someone. As Kinman recounted: "[W]hen [Collins] was calling, he said, ['A]nswer the phone, b*tch. Answer the phone, b*tch. Answer the phone, b*tch.[']" *Id.* Collins "[k]ept saying that" and then "started biting his . . . pack of cigarettes" and "stomping his feet." *Id.*

[6] Meanwhile, after Menning left Kinman's residence, she received a phone call. Although Menning did not recognize the phone number, she recognized Collins's voice on the phone. Menning recalled that she hung up, texted the number to leave her alone, then blocked the number. Cellphone records reflected that, around 10:00 p.m., three calls were placed from Kinman's phone to Menning's phone. Around that time, Menning sent the following text message to Kinman's phone: "Stop[.] . . . [I]t's over." Elec. Ex. Vol. p. 47.

Kinman testified that Collins eventually threw his phone down, picked it back up, and refused to return the phone despite Kinman's pleas that he was expecting an important call. Collins said, "d*mn it," and sat down "for a little bit in a chair that was right by the door." Tr. Vol. 3 p. 29. Around that time, Kinman again asked Collins to return the phone. Collins declined, saying: "[N]o, this is my phone." *Id.* Collins eventually stood up, at which point Kinman asked him to leave. Collins then exited the apartment, with Kinman following and again asking for the phone. Collins "sat there on the porch for a second" and told Kinman: "This is my phone. You're not getting it back." *Id.* Before long, Collins walked away toward a different apartment complex. Kinman administered oxygen to himself, then contacted a neighbor to call 911.

During trial, the State moved to amend the theft count from a Level 6 felony to a Class A misdemeanor "based upon the evidence that was presented." *Id.* at 184. The trial court granted the motion. The parties then rested. At that point, Collins tendered a proposed jury instruction on the offense of residential entry, which the trial court acknowledged was a "lesser offense of burglary." *Id.* at 189. Unlike burglary, the offense does not require proof that, when entering the residence, the defendant intended to commit a felony or theft inside the residence. In support of the instruction, Collins argued that there was a serious evidentiary dispute about the intruder's intent upon entering Kinman's residence. Collins referred to Kinman's testimony about how the intruder asked about a woman when entering the residence. He argued that Kinman's testimony indicated that "the original intent of entering the residence was to try

to locate that individual and not to engage in a felony." *Id.* at 190. Collins then added: "The fact that afterwards, after he . . . already entered, that a felony may have taken place, I don't think obviates the fact that the original intent of going in, the evidence show[ed] that it was because the individual was looking for somebody." *Id.* The State objected to giving the jury instruction, asserting that the theory of the defense espoused "in the opening" and "[a]ll the questions" had "been . . . [']it wasn't me[']," i.e., a defense of mistaken identity. *Id.* at 189. As to the evidence presented, the State claimed there was "no contradictory evidence that a weapon was used" and "the testimony in this case and what's been presented . . . d[id] not support granting the residential entry." *Id.* The State also argued that caselaw did not support giving the instruction, arguing there were "cases that say you could go in . . . [and] find a deadly weapon once you're in the house." *Id.* at 190. Collins responded that, based on the evidence presented, he believed he had "a right to argue that the intent for going in [the residence] was based upon . . . Kinman's testimony that the first words that were being uttered" were about locating a female. *Id.* The trial court ultimately declined to give the tendered instruction, noting that it was "aware of authority that . . . the intent can form after you enter the premises" and, so far, the defense was that "it wasn't me; it was someone else." *Id.* at 191.

[9] During Collins's closing argument, he asked the jury to focus on the intent of the intruder, arguing that "[t]he intent of going into the residence was to look for somebody." *Id.* at 205. Collins also maintained an alternative defense of mistaken identity, asserting that the State had "problems" in "proving that . . .

Collins was the perpetrator[.]" *Id.* The jury found Collins guilty as charged, and the trial court entered judgments of conviction. At a subsequent sentencing hearing, the trial court "reduce[d] the [robbery] conviction to a Level 5 felony" based on double jeopardy concerns related to using Collins's possession of a knife to elevate both the burglary conviction and the robbery conviction. *Id.* at 247. The trial court imposed fully executed sentences, ordering Collins to serve twenty-eight years for burglary, five years for robbery, and 365 days for theft. The trial court ultimately imposed an aggregate sentence of thirty-three years in the DOC. In orally pronouncing the sentence, the court said: "The Court orders Counts I and II shall run -- Counts I and III shall run consecutive to Count II for a total of 33 years executed[.]" *Id.* at 247. However, the court's written sentencing order—which is consistent with the Abstract of Judgment[6]— reflects that Collins's "sentences on Counts II and III [were] to run concurrently with one another." Appellant's App. Vol. 2 p. 224. Collins now appeals.

## Discussion and Decision

Collins claims the trial court erred in declining to instruct the jury on the offense of residential entry. In general, we review decisions involving jury instructions for an abuse of discretion. *E.g.*, *Dunn v. State*, 230 N.E.3d 910, 914 (Ind. 2024). A trial court abuses its discretion if its decision was clearly against

---

[6] We accessed the Abstract of Judgment through the Odyssey case-management system.

the logic and effect of the facts and circumstances before the court or if it misapplied the law. *E.g., M.D. v. State*, 108 N.E.3d 301, 303 (Ind. 2018).

[11] In reviewing whether the trial court erred in declining to give a tendered jury instruction, we consider whether (1) the instruction correctly stated the law, (2) the substance of the instruction was covered by other instructions, and (3) the record supported giving the instruction. *Davis v. State*, 835 N.E.2d 1102, 1113 (Ind. Ct. App. 2005), *trans. denied*. Here, the instruction accurately recited the elements of residential entry, largely tracking the language in our Pattern Jury Instruction 4.1220. *See* Ind. Code § 35-43-2-1.5 (defining residential entry); *compare* Appellant's App. Vol. 2 p. 108 *with* Ind. Pattern Crim. Jury Inst. 4.1120. Because no other instruction covered the elements of residential entry, we turn to whether the record supported giving the tendered jury instruction.

[12] Where, as here, the tendered instruction was for an alleged lesser-included offense, Indiana courts follow the analytical framework our Supreme Court established in *Wright v. State* to determine whether the record supported giving the instruction. 658 N.E.2d 563, 566–67 (Ind. 1995). Under *Wright*, the trial court must first determine whether the offense described in the instruction was either inherently or factually included in one of the charged offenses. *See id.* If so, the court must determine whether the record discloses a "serious evidentiary dispute about the element or elements distinguishing the greater from the lesser offense" such that, "in view of this dispute, a jury could conclude that the lesser offense was committed but not the greater[.]" *Id.* at 567. If the record discloses

this type of serious evidentiary dispute, it is "reversible error for a trial court not to give an instruction, when requested, on the . . . lesser offense." *Id.*

[13] Turing to the statutes at issue in this case, a person commits burglary when the person "breaks and enters the building or structure of another person, with intent to commit a felony or theft in it[.]" I.C. § 35-43-2-1. A person commits residential entry when the person "knowingly or intentionally breaks and enters the dwelling of another person[.]" I.C. § 35-43-2-1.5. In this case, it is undisputed—and our caselaw establishes—that residential entry is a lesser-included offense of residential burglary, with the only difference in this scenario being whether the defendant intended to commit a felony or theft when entering the residence. *See Patterson v. State*, 729 N.E.2d 1035, 1043 (Ind. Ct. App. 2000); *Webster v. State*, 708 N.E.2d 610, 616 (Ind. Ct. App. 1999), *trans. denied*. We therefore turn to the trial court's determination that there was no serious evidentiary dispute to support giving the instruction on residential entry.

[14] In deciding to instruct the jury on a lesser-included offense, the trial court must "examin[e] the evidence presented by both parties regarding the element(s) distinguishing the greater offense from the lesser one." *Leonard v. State*, 80 N.E.3d 878, 885 (Ind. 2017). In the end, the trial court must evaluate "the 'seriousness of any resulting dispute,'" which inherently involves decisions about the "'weight and credibility of [the] evidence[.]'" *Id.* (quoting *Fish v. State*, 710 N.E.2d 183, 185 (Ind. 1999)). If the trial court finds that the evidence did not support giving the instruction, we review the finding for an abuse of discretion "in deference to the trial court's proximity to the evidence[.]"

*Erlewein v. State*, 775 N.E.2d 712, 714 (Ind. Ct. App. 2002), *trans. denied*. But "[i]f a trial court reject[ed] a tendered lesser-included offense instruction on the basis of its view of the law, as opposed to a finding that there is no serious evidentiary dispute, appellate review of the ruling is *de novo*." *White v. State*, 849 N.E.2d 735, 739 (Ind. Ct. App. 2006), *trans. denied*. All in all, the trial court must give the instruction if the evidence supports a reasonable conclusion that the defendant committed the lesser offense but not the greater. *Wright*, 658 N.E.2d at 567.

[15] Here, the trial court found no serious evidentiary dispute regarding Collins's intent, concluding that, for the offense of burglary, the intent to commit a felony or theft "can form after you enter the premises." Tr. Vol. 3 p. 191. But this was incorrect. Our law provides a distinction between (a) the time at which intent and culpability are established for the commission of the burglary itself and (b) the continuing nature of the offense when considering circumstances that may elevate the crime. Our Supreme Court addressed the continuing nature of burglary in *Fix v. State*, examining whether it was proper to elevate a burglary based on the defendant's decision to "arm[] himself" with a deadly weapon after breaking and entering the premises. 186 N.E.3d 1134, 1136 (Ind. 2022). The Court explained that burglary is an "ongoing crime" that "encompasses a defendant's conduct inside the premises," with the offense "terminating only when the unlawful invasion ends." *Id.* Thus, in *Fix*, our Supreme Court concluded that, because the defendant armed himself amid the invasion—i.e., before the offense terminated—it was proper to apply a statutory

elevating circumstance that elevates the offense of burglary to a Level 2 felony when "committed while armed with a deadly weapon." *Id.* at 1138 (quoting I.C. § 35-43-2-1).

[16] But nothing about *Fix* modified the well-established principle that "[a] criminal conviction for burglary requires proof beyond a reasonable doubt of a specific criminal intent which coincides in time with the acts constituting the breaking and entering[.]" *Robinson v. State*, 541 N.E.2d 531, 533 (Ind. 1989) (quoting *Gebhart v. State*, 531 N.E.2d 211, 212 (Ind. 1988)); *cf. Fix*, 186 N.E.3d at 1136 ("[T]he offense is complete, for purposes of prosecution, at the moment the building or structure is broken into and entered."). Therefore, "a person who breaks and enters without any intent to commit an underlying [crime] is not guilty of burglary." *Swaynie v. State*, 762 N.E.2d 112, 114 (Ind. 2002).

[17] At trial, the evidence established that Collins burst through Kinman's doorway while demanding: "Where's she at? Where's she at? I know she's here, she's here. Where's she at?" Tr. Vol. 3 p. 26. This entry occurred approximately twenty minutes after Collins had been inside the residence with Menning, with tension escalating between them. Menning testified that she and Collins were friends, but she had the impression that Collins "[a]bsolutely" wanted to be more than friends. *Id.* at 130. After tension escalated between Menning and Collins, Menning left the residence and Collins followed her outside, where he threw his phone in apparent frustration. Although Collins and Menning had arrived together with others, they left walking in different directions. When Collins later burst into the residence, his first words concerned finding a female.

It was only after Kinman told Collins no one else was present that Collins became violent—grabbing Kinman's chain, pushing Kinman down and striking him in the chest, brandishing a knife, demanding money, and ultimately taking Kinman's phone, which Collins then used to place multiple calls to Menning.

[18] On appeal, the State argues that giving the lesser-included instruction was unwarranted because Collins engaged in violent, criminal conduct "almost immediately upon his entrance." Appellee's Br. p. 10. We note, however, that the proper inquiry is not whether there was sufficient evidence supporting the greater offense, but whether there was a serious evidentiary dispute such that a jury could reasonably find the defendant committed the lesser offense but not the greater. *See Wright*, 658 N.E.2d at 567. As to the timing of Collins's intent to commit a felony or a theft in Kinman's residence, the trial court found no substantial evidentiary dispute to support giving the instruction based on its misapprehension that the required intent "can form after you enter the premises." Tr. Vol. 3 p. 191. By focusing on Collins's intent upon entry into the residence, the evidentiary dispute comes into much sharper focus. Indeed, the sequence of events reasonably supports a finding that Collins entered with the intent to locate Menning, with Collins forming the criminal intent to forcibly rob Kinman of cash and steal his phone only after failing to find her.

[19] The State also directs us to *VanWanzeele v. State* for the proposition that no serious evidentiary dispute existed because Collins's defense seemed to focus on whether he was the perpetrator. 910 N.E.2d 240, 245 (Ind. Ct. App. 2009), *trans. denied*. In citing *VanWanZeele* and characterizing Collins's defense as one

of mistaken identity, the State omits that, in his closing argument, Collins directly argued that the "[t]he intent of going into the residence was to look for somebody[.]" Tr. Vol. 3 p. 205. Indeed, although Collins maintained an alternative theory of mistaken identity, he specifically focused on Kinman's testimony in posing the following rhetorical question to the jury: "[W]as the intent to go in there and look for somebody or was the original intent to go in and rob?" *Id.* The case at hand is readily distinguishable from *VanWanzeele*, which did not involve these types of arguments to the jury, nor evidence about a perpetrator's statements upon entry. Rather, in *VanWanzeele*, the perpetrator had taken keys from a vehicle, attempted to enter multiple apartments, and eventually entered the vehicle owner's apartment before emerging with stolen items. 910 N.E.2d at 243. There, the only evidence cited to support giving a residential entry instruction was that the perpetrator "first went into the bathroom of the apartment before going into the kitchen" where the theft occurred. *Id.* at 244. Given evidence that the perpetrator methodically tried to enter different apartments after taking keys from a vehicle, we agreed that there was no serious evidentiary dispute about the perpetrator's intent, with "[t]he dispute" instead "focused on the more basic issue of whether [the defendant] ever entered the [apartment] at all." *Id.* at 245. In contrast, here, the evidence permitted reasonable competing inferences about Collins's intent when he entered Kinman's apartment, and the presence of this serious evidentiary dispute required giving the instruction on the lesser-included offense. *Cf. Wright*, 658 N.E.2d at 567 (explaining that, where there is a serious evidentiary

dispute, it is reversible error not to give a tendered instruction on a lesser-included offense).

[20] All in all, given the trial court's misapprehension about when the intent to commit a felony or theft must exist for burglary, along with the presence of substantial evidence supporting competing reasonable inferences about Collins's intent upon entry, we conclude that failing to give the lesser-included instruction was reversible error. We therefore reverse the burglary conviction and remand for retrial on that count. Although we affirm the remaining convictions and sentences, we instruct the trial court to reconsider any double jeopardy issues following resolution of the burglary count on remand. On remand, we also instruct the trial court to issue an order resolving whether it intended for the sentences in Counts I and III to run concurrently or, instead, whether it intended for the sentences in Counts II and III to run concurrently. *Compare* Tr. Vol. 3 p. 247 ("The Court orders Counts I and II shall run -- Counts I and III shall run consecutive to Count II for a total of 33 years executed[.]") *with*, *e.g.,* Appellant's App. Vol. 2 p. 224 ("The Court orders sentences on Counts II and III to run concurrently with one another.").

[21] Affirmed in part, reversed in part, and remanded with instructions.

Bailey, J. and Bradford, J., concur.

ATTORNEY FOR APPELLANT
Jennifer A. Joas
Madison, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Tyler G. Banks
Supervising Deputy Attorney General
Indianapolis, Indiana